## Corydon Township Election.

*Frank J. Lyons,* for petitioners.

ARIRD, P. J., Jan. 18, 1930.—This proceeding is based on the provisions of an act entitled "An Act providing for the opening of ballot-boxes after general, municipal, special, or primary elections, upon petition to the Court of Common Pleas, or a judge thereof, under certain circumstances, and imposing certain duties in connection therewith upon the court, the prothonotary and the county treasurer," approved April 23, 1927 (P. L. 360).

A requisite number of persons presented their petition, in which they averred that a general election was held in the First Voting Precinct of the Township of Corydon, County of Warren, State of Pennsylvania, on Tuesday, Nov. 5, 1929. The petitioners also allege, upon information which they have received, and which they consider reliable, that fraud was committed in the computation of the votes cast in said election precinct in the Township of Corydon, or in the marking of the ballots, or otherwise in connection with said ballots for the office of supervisor, then to be voted upon in the Township of Corydon.

The petitioners respectfully prayed the court to order and direct the opening of the ballot-box of said voting precinct of Corydon Township, as provided by the act of assembly. This petition was presented on Nov. 29, 1929, on which the following order was made:

"And now, to wit, Nov. 29, 1929, upon hearing the within petition and upon due consideration thereof, and it appearing that the petitioners have filed in

the office of the Prothonotary of the County of Warren, State of Pennsylvania, the sum of fifty dollars cash, as required by the act of assembly in such case made and provided, it is ordered that H. H. Jefferson, Sheriff of Warren County, Pennsylvania, forthwith take into his custody and possession the ballot-box of the First Voting Precinct of the Township of Corydon, in the County of Warren and State of Pennsylvania, used in the general election held on Tuesday, Nov. 5, 1929, and cause the same to be produced before this court on Wednesday, Dec. 4, 1929, at 10 o'clock A. M., at which time it is ordered that the entire vote cast in said First Voting Precinct of said Township of Corydon aforesaid at said election held on Nov. 5, 1929, shall be counted by this court, as provided by law; it is further ordered that a copy of this order be served by the Sheriff of Warren County, Pennsylvania, on O. C. Sparks and Burr K. Garvin, candidates for the office of supervisor at said election hereinbefore referred to.            D. U. ARIRD, P. J."

The ballot-box having been brought into court, the same was opened by the court, and the votes were corrctly counted by assistants, as provided by the act of assembly. O. C. Sparks had been nominated for supervisor on three tickets, Republican, Democratic and Prohibition. It appears that one Burr K. Garvin was an independent candidate for the office of supervisor of said township. In some votes cast Garvin's name had been written in the vacant space provided by law under supervisor, but it was written B. K. Garvin, Burr K. Garvin and Burr Garvin. Also, Garvin received votes where the voters had used what are commonly known as stickers. Many of these stickers were not placed on the ballot in the space provided for that purpose, but when this ballot-box was opened, the one question raised at that time was whether or not the tickets voted for B. K. Garvin, Burr K. Garvin or Burr Garvin could all be counted for one person. Through error or mistake on the part of the court, the ballots whereon stickers had been used for Garvin and pasted on said ticket improperly at that time did not receive attention. Consequently, the court ordered the ballot-box to be reopened on Wednesday, Jan. 15, 1930, and gave Frank J. Lyons, attorney for petitioner, notice that said ballot-box would be reopened for the purpose of re-examining the returns made by the election board. After the recount had been completed on Dec. 4, 1929, the ballots were properly returned to the ballot-box, which was tied and sealed in the presence of the court, as ballot-boxes are required to be sealed by election officers. Said box was returned to the Sheriff of Warren County and remained in his custody until Jan. 15, 1930, when said box was again ordered to be brought into court. The same persons that had formerly recounted the vote were present and acted in the presence of the court as a board for recounting and re-examining the ballots cast in said First District of Corydon Township, Warren County, Pennsylvania.

It was found by the board that O. C. Sparks had received 29 Republican votes, 12 Democratic votes and 1 Prohibition vote in said voting precinct of said township. That B. K. Garvin received 4 votes, Burr K. Garvin 27 votes and Burr Garvin 4 votes, making a total of 35 votes. The board further found that Garvin received 20 votes which were placed on the ballot by stickers, but the stickers were not placed in the space on the ballot provided for that purpose, but the stickers as they were stuck on the ballot were scattered over the different names printed on the ballot under the heading of supervisor. Also, they found 8 ballots on which Garvin's name had been written, and the name written on these 8 ballots was not written in the space provided for that purpose. Consequently, the board threw out the 28 ballots, leaving the said Garvin with 35 ballots only. Out of these 35 bal-

lots as aforesaid, Burr K. Garvin received 27 ballots, B. K. Garvin 4 and Burr Garvin 4 ballots.

So far as we have examined decisions of our higher courts we have not been able to find any decisions to declare whether or not, under the circumstances, these 35 votes could all be counted for Burr K. Garvin, but, in our opinion, that would be error. From the decisions of our higher courts, there is no question in our mind but that the votes where stickers were used and scattered over the ballot under the name of supervisor, but were not pasted on the space provided for that purpose, could not be counted as votes for Burr K. Garvin. Neither could the 8 votes written on the ballot for Burr K. Garvin, but not written on the space provided for that purpose, be counted as votes for him. In examining the return made by the election board, we find that, in our opinion, it was fatally defective. The election board found that O. C. Sparks had received in the First Voting Precinct of said township 44 votes; two of these votes were defective and were thrown out at the time the recount was made, leaving O. C. Sparks with 42 votes. Again, the return of the election board showed that Burr K. Garvin received 50 votes. This appears to be for the reason that the election board gave Burr K. Garvin all the votes that were cast for him, without regard to the part of the ticket on which the stickers had been pasted or the name Burr K. Garvin written on said ballot. The recount found that Burr K. Garvin received 27 legal votes.

Again, we consider it error in the election board's return that they made no return showing that B. K. Garvin had received any votes for supervisor and also failed to show that Burr Garvin had received any votes for supervisor of said township, but the recount gave B. K. Garvin 4 votes, which were legal votes, and Burr Garvin 4 votes, which were legal votes.

From said examination of said ballots and computation of the votes cast in said election district at said election as shown by the opening of said ballot-box, the court finds that there was no intentional fraud or intention of fraud on the part of the election officers of said district at said election, but everything, so far as shown by said ballots and computation thereof, shows there was substantial error in the computation of the votes cast and also in keeping tally of said votes for supervisor of said township. The tally-sheet and the return-sheet fail to show that there were any legal votes cast for B. K. Garvin or Burr Garvin. The tally-sheet kept by the election board and the return-sheet made by the election board simply show votes cast for O. C. Sparks and Burr K. Garvin, and we conclude from the examination of the ballots cast that the election board gave Burr K. Garvin all the votes that were cast for him, whether legal or illegal, but did not give him credit in the 50 votes returned for the votes cast for B. K. Garvin or Burr Garvin. Also, the election board in its return showed, neither on the tally paper nor the return-sheet, that they made any memoranda in the tally-sheet of the votes cast for B. K. Garvin or Burr Garvin, but simply ignored the votes cast for Burr Garvin or B. K. Garvin, whether cast legally or illegally.

Mr. Lyons, attorney for the petitioners, made argument and submitted a well-written brief. This brief related principally to the question as to whether or not all of the votes cast for one Garvin should be counted for Burr K. Garvin. The later decisions that he cited and the decisions carrying the greater weight in regard to the matter are found in the defendant's brief, Quinn's Contested Election, 14 Dist. R. 386, and East Taylor Township Supervisor's Election, 17 Pa. C. C. Reps. 657. In the latter case the lower court decided that votes cast for J. Keiper, J. B. Keiper and John Keiper could be counted as votes for John Keiper. The election board threw out the tickets

where the name of Keiper had been inserted and afterwards no cross had been placed opposite his name. The return showed that Albert Snyder received 59 votes, Mr. Stanton 39 votes and 41 votes were received by John Keiper. John Keiper's name was not printed on the ballots. The election board was in error when the board held that it was necessary to put a cross after the name of John Keiper where John Keiper's name had been inserted in the column provided for that purpose. It does not appear in this case, except by a remark of the court in writing the opinion, whether or not the different names for Keiper were written in the proper space left for that purpose, or whether they had been scattered in different places under the title of supervisor.

The next decision is found in Quinn's Contested Election, 14 Dist. R. 386. The county commissioners had prepared the ballots as follows: William D. Bahr, Republican; Patrick Quinn, Democratic; William Bahr, Union. There were two voting precincts. In the first voting precinct William D. Bahr received 119 votes, Patrick Quinn 133 votes and William Bahr 9 votes. In the second voting precinct William D. Bahr received 84 votes, Patrick Quinn 94 votes and William Bahr 34 votes. The election board refused, in computing the returns, to add the votes cast for William D. Bahr, Republican, and William Bahr, Union. In the recount the court added the votes cast for William D. Bahr and William Bahr; consequently, he received the majority of votes and was declared elected treasurer of said township.

The reason given by President Judge Terry in writing the opinion and rendering the decision was that the voters voted the ballot as provided by the county commissioners, and for his authority he very largely cited the Act of Assembly of April 14, 1897, P. L. 23; he also cited the Act of April 29, 1903, P. L. 338, amending the Act of June 10, 1893, P. L. 419, as amended July 9, 1897, P. L. 223. The court, in writing the opinion, said: "As the ballot on its face was in accord with the provisions of the law, and, therefore, prima facie legal, the election officers were not in strictness bound to refuse to count the votes cast for William Bahr by the use thereof."

The court further said: "Section 27 of the Act of June 10, 1893, P. L. 419, as amended by the Act of April 29, 1903, P. L. 338, provides that 'If a voter has marked his ballot otherwise than as directed by this act, so that for any reason it is impossible to determine the voter's choice for any office to be filled, his ballot shall not be counted for such office,' etc."

The court further said: "The principle that the intention of the voter, if it can be learned, shall govern has not been altogether discarded."

Now, this opinion was written March 29, 1905, and simply held that the two names, William D. Bahr and William Bahr, should be counted together, for the reason that the ballots were prepared by the county commissioners.

Now we have a number of Supreme Court decisions which govern the question, where stickers should be placed, and also where names should be written, where their names are not printed on the ballot. The latest case we have is Rodgers' Contested Election, 234 Pa. 512, where Mr. Justice Moschzisker said:

"[The act] prescribes the form of the ballot as follows: 'Make a (X) in the square to the right of each candidate for whom you wish to vote. If you desire to vote for a person whose name is not on the ballot, write or paste his name in the blank space provided for that purpose.'

"Here, the voters who cast the ballots in question did not adhere to the provisions of the act or the requirements of the law. They desired to vote for a person who was not on the official ballot, but instead of writing or past-

ing his name under the proper designation of the office to be filled in the space beneath the printed name of Elwood, they placed a sticker directly over that name; one class making the sticker fast so as entirely to obliterate the name of Elwood."

The court further said: "We feel that under the doctrine of our decisions, the votes in question were void and should not have been counted."

The court cited Lawlor's Contested Election, 180 Pa. 566, at page 570, and quoted from the decision. There the court said: "The only prescribed mode of voting for persons whose names are not already on the ballot is by inserting their names in the blank spaces prepared therefor."

Mr. Justice Moschzisker further said: "Where slips resembling a party column with names, designations of offices and directions how to vote were pasted over such a column, the court held the ballot invalid."

The court also cites Little Beaver Township Election, 165 Pa. 233, at page 237: "The name, or names, as the case may be, cannot be inserted anywhere . . . but only in the appropriate blank spaces prepared therefor. . . . In so far as the mode of voting is thus specifically prescribed by the act, all other modes are by necessary implication forbidden."

We have before us "The Voter's Guide," as prepared by William G. Johnston Company, Pittsburgh, Pa. Section 85 reads as follows:

"Section 85. Ballot Decisions. Names of the candidates not on the printed ballots may be inserted by writing or pasting a printed slip with a name on it in the space provided for that purpose," here citing a number of decisions of our Supreme Court.

Section 14 of the Act of June 10, 1893, P. L. 419, provides for what we might term a blanket ballot. In part, section 14 reads as follows: "There shall be left at the right of the groups of candidates for presidential electors, and of the lists of candidates for other officers (or under the title of the office itself for which an election is to be held, in case there be no candidates legally nominated therefor), as many blank spaces as there are persons to be voted for by each voter for such office, in which spaces the voter may insert the name of any person whose name is not printed on the ballot as a candidate for such office, and such insertion shall count as a vote without the cross-mark hereinafter mentioned."

Then we come to the Act of April 29, 1903, P. L. 338, relating to amendment of the 9th and 14th sections of the former act. This 14th section is re-enacted almost word for word by the amending act. Then we come to the recent Act of July 9, 1919, P. L. 829, an amendment to the Act of 1893, as amended by the Act of 1903, by providing a manner in which voters may designate their choice of candidates, and repealing acts or parts of acts inconsistent therewith. In part, section 22, page 831, reads as follows: "He may vote, according to the above provisions, for the candidate of his choice for each office to be filled, according to the number of persons to be voted for by him for each office, or he may insert in the blank space provided therefor, in accordance with section 14 of this act, any name not already on the ballot."

The Act of Assembly approved June 10, 1893, P. L. 419, with its amendments, provides what may be called a system for holding elections in Pennsylvania. Among other things, it provides:

First. Duties of the county commissioners.

Second. Duties of the Secretary of the Commonwealth.

Third. Duties of the election board.

Fourth. Duties of the voter in order to cast a legal ballot, i. e.: 1. By a cross opposite the name of the candidates printed on the ticket. 2. A blank

space in which the voter may insert the name of any person whose name is not printed on the ballot as a candidate for such office.

These four seem to be the principal features.

The title of the Act of June 10, 1893, P. L. 419, reads as follows: "To regulate the nomination and election of public officers, requiring certain expenses incident thereto to be paid by the several counties, and punishing certain offenses in regard to such elections."

The first line of this title reads: "To regulate the nomination and election of public officers," and this act includes thirty-six sections. The last section reads as follows: "All laws and parts of laws inconsistent herewith shall be and the same are hereby repealed."

Now, so long as this act with its amendments provides a general election law, in our opinion, the courts cannot take into consideration whether or not there are but a few voters or a large number of voters in the voting precinct. In our opinion, the voter must have some knowledge, or some assurance, relating to the person for whom he is voting. Take it in our large cities, if a man was running for a city office under the name of John Smith, we cannot comprehend, if his name is not printed on the ballot, how votes could be counted for him if cast under the names of John Smith, John A. Smith, J. Smith or John Andrew Smith. Of course, where a name is printed on the ballot by the county commissioners, then the voter has some assurance that he is voting for the candidate of his choice; but where a name is not printed on the ticket by the commissioners and voters simply write the name or use stickers, then, especially in our cities, numerous fraudulent votes could be cast where the voters use, as above illustrated in John Smith, different given names or initials. So long as the Act of 1893, with its supplements, provides a general law relating to elections, and our Supreme Court has enunciated the law relating to the question of legal and illegal ballots, it is simply the duty of the lower court to follow the act of assembly, with its amendments, and the construction placed upon it by our Supreme Court.

While no question is raised here in regard to the votes cast for supervisor of said township in the second voting precinct of said township, the returns in said second voting precinct show that O. C. Sparks received 14 votes and Burr K. Garvin received 1 vote.

In our opinion, it would be waste of time to write further in regard to this matter. In our mind, there is no question but that O. C. Sparks was duly elected supervisor of said Corydon Township, Warren County, Pennsylvania, and, if we are informed correctly, the election board of said township duly issued a certificate to O. C. Sparks, showing his election as supervisor of said township.

It is, therefore, found by the court that substantial error was committed in the computation of the votes cast on the ballots contained in said ballot-box, and also in keeping the tally-sheets in said First Voting Precinct, and therefore, Jan. 18, 1930, it is hereby certified by said court that substantial error has been discovered in said matter, and the sum of $50, cash deposit with the prothonotary by said petitioners, be returned to the petitioners, and the prothonotary of said county is directed to pay the same to the said petitioners, or their attorney, and the County of Warren is authorized and directed to pay the costs of this proceeding.

From Joseph H. Goldstein, Warren, Pa