## In re Election of Supervisor of Whitpain Township. No. 1

*J. Stroud Weber*, for Ross G. Rile, exceptant.
*W. H. Rosenberry*, for B. Frank Cassel, exceptant.

PER CURIAM, January 5, 1942.—We have before us exceptions to the report of the recount board, filed by both candidates in a contested election proceeding involving the office of supervisor in Whitpain Township, Montgomery County, Pa.

B. Frank Cassel received the nomination on both the Republican and the Democratic tickets for the office of Supervisor of Whitpain Township, which is composed of two election districts, the North district and the

West Ambler district. As there was only one supervisor to be elected, his was the only name printed on the official ballot for township supervisor as the Republican and Democratic candidate at the municipal election held on Tuesday, November 4, 1941. Friends of Ross G. Rile, a former supervisor, conducted a sticker campaign in his behalf at this municipal election.

After the election the county board of elections made a return of the votes cast for supervisor in both districts of Whitpain Township, and the result was: Ross G. Rile, 341 votes; B. Frank Cassel, 326 votes.

Thereafter, on November 12, 1941, upon the petition of electors alleging fraud or error in computing the vote in the North district, the court appointed a recount board to compute the vote cast for supervisor in that district. The recount board reported that they rejected a total of 62 ballots for the following reasons:

(a) Stickers not in space provided;
(b) Erasures or mutilations voiding ballots;
(c) Ballots marked with ink;
(d) Ballots marked with a check instead of an X;
(e) Ballots marked for more than one candidate;
(f) Written-in name not in space provided.

As a result of this recount in the North district, the board reported:

| | |
|---|---|
| B. Frank Cassel | 150 votes |
| Ross G. Rile | 287 votes |
| Ross Rile | 20 votes |
| R. G. Rile | 1 vote |
| Ross Reihl | 1 vote |
| Ross Riles | 1 vote |
| G. Ross Rile | 1 vote |
| Ros G. Rile | 1 vote |
| Ross M. Rile | 1 vote |
| Ross G. Reil | 1 vote |
| Dr. Ed. Reil | 1 vote |

Later, on December 17, 1941, upon petition of electors alleging fraud or error in computing the vote in the *West Ambler* district, the court appointed the same recount board, who reported that they rejected 13 ballots. Four of these were rejected for the reason that the name of the candidate was written in, but not in the space provided, and also because a large cross mark had been made over the entire office block for supervisor. The remaining nine were rejected because a large cross mark was made over the entire office block for supervisor.

As a result of the recount in the West Ambler district, B. Frank Cassel received 175 votes, Ross G. Rile, 9 votes, and Ross Rile, 3 votes.

Therefore, if the computation of the county board of elections was correct, Ross G. Rile was the successful candidate for supervisor by 15 votes; and if the computation of the recount board was correct, and also if the identity of Ross G. Rile was established under the different names on the ballots so that the vote could be cumulated, Ross G. Rile would be elected by one vote.

Both candidates have filed numerous exceptions to both reports of the recount board. These exceptions were argued before the court en banc on December 17th and on December 30th, respectively, and are now pending for decision. Notwithstanding separate petitions were filed to open the ballot boxes and recount the votes in each of the two election districts, and arguments on exceptions were heard at different times, we deem it advisable, since all exceptions refer to the same contest and time is short, to dispose of the entire contest in one opinion.

As the recount board rejected 62 votes for supervisor in the North district, considering all the exceptions filed to the return in this district, there are 61 ballots in the North district the validity of which is con-

tested. These 61 votes for supervisor divide themselves into seven main classes:

I. Thirty votes rejected by the recount board where the sticker was placed in a space other than that provided on the ballot.

II. Eleven votes rejected by the recount board where the name was written in a space other than that provided on the ballot.

III. Two votes rejected by the recount board where the name of the candidate for supervisor was written in the space provided but had a check mark after it; and in addition, one of the ballots had check marks in each office block instead of cross marks.

IV. Seven votes rejected by the recount board where the name was written in or the sticker was placed in the proper space, but where the name of B. Frank Cassel and Democrat or Republican printed on the ballot was stricken out by lead pencil.

V. Six votes rejected by the recount board where the name was written in or the sticker placed in the proper space, but also where a cross mark was made after B. Frank Cassel, Republican, so that the voter marked for more than one candidate.

VI. Four votes rejected by the recount board where there was an evident erasure of the cross mark in the office block for supervisor.

VII. One vote rejected by the recount board where the name was written in the proper space but with ink.

As Mr. Cassel had both the Democratic and the Republican nominations for township supervisor on the official ballot for the municipal election in the office block for "Supervisor" (vote for one), the name of B. Frank Cassel appeared with bracket pointing to and enclosing two spaces, one designated "Democrat", followed by a blank square for the cross mark, and the other designated "Republican", also followed by a blank square for a cross mark. Near the lower end of this office block there is a blank space provided for writing

in a name, or inserting a sticker, before coming to the heavy printed line separating the supervisor office block from the tax collector office block.

There were 41 ballots in the North district, which were not counted by the recount board appointed by the court, because, as we explained in classes I and II, either the sticker inserted, or the name written in, was not in the space provided in the office block for supervisor, and this action has been the subject of exceptions by Mr. Rile.

In 30 of these ballots the name of Ross G. Rile was printed on a sticker and pasted not in the blank space provided for that purpose, but immediately under the name of Cassel opposite the square which would be used by a voter desiring to vote for Mr. Cassel as a Republican. In most of these cases the sticker covered wholly or in part the word "Republican".

In 11 ballots the name of Ross G. Rile was written not in the blank space provided for that purpose, but immediately under the name of Cassel opposite the square which would be used by a voter desiring to vote for Mr. Cassel as a "Republican".

The official ballot displays the following instruction in bold type:

"To vote for a person whose name is not on the ballot, write or paste his name in the blank space provided for that purpose": See section 1003 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333.

Paragraph (c) of section 1215 of the Election Code provides, inter alia, ". . . or he [the voter] may insert by writing, stamping or sticker, in the blank space provided therefor, any name not already printed on the ballot, and such insertion shall count as a vote without the making of a cross (X) mark".

Paragraph (a) of section 1223 of the Election Code provides, inter alia: "Any ballot indicating a vote for any person whose name is not printed on the ballot, by

writing, stamping or sticker, shall be counted as a vote for such person, if placed in the proper space or spaces provided for that purpose, whether or not an (X) is placed after the name of such person".

The question before us as to these 41 ballots is not one of ascertaining the intention of the voter, for the intention to vote for Rile is obvious. The question involved is, whether the direction of the statute, as to the place on the ballot where additional names may be added, is mandatory.

In McCowin's Appeal, 165 Pa. 233, which involved stickers, the court said (p. 237) :

"The name or names, as the case may be, cannot be inserted anywhere . . . but only in the appropriate blank spaces prepared therefor. . . .

"In so far as the mode of voting is thus specifically prescribed by the act, all other modes are, by necessary implication, forbidden".

In Lawlor's Contested Election, 180 Pa. 566, also involving stickers, the court said (p. 570) :

" 'The only prescribed mode of voting for persons whose names are not already on the ballot is by inserting their names in the blank spaces prepared therefor . . .' "

In Rodgers' Contested Election, 234 Pa. 512, also a sticker case, the court said (p. 519) :

"While it may be that the Court in this instance correctly guessed the intention of the voter, yet the fifty-seven mutilated ballots were not marked in accordance with the instructions contained in the Act of Assembly, and under the well established doctrine in this State they should not have been counted; to permit the counting of such ballots would be a precedent fraught with grave dangers for the future".

To the same effect is Pfaff v. Bacon, 249 Pa. 297, 306, and Springdale Township Election Recount, 307 Pa. 312, 315.

While it is true that all of the above cases were decided under election laws prior to that of 1937 and that the facts of those cases were not entirely on all fours with the facts in this case, the difference in the facts and the wording of the statutes is not of such materiality as to affect the rule which they all announce, namely, that where the legislature has specifically prescribed a mode of voting all other modes are, by necessary implication, forbidden.

Applying this rule to the case at hand, we are of the opinion that the words of the act which apply to the place on the ballot where additional names may be added are mandatory, and that a name placed on the ballot at any other place than that designated is illegal and cannot be counted. Counsel for exceptant cites no authority for his contention except the proviso in section 1223 of the act which reads as follows:

"Any ballot indicating a vote for any person whose name is not printed on the ballot, by writing, stamping or sticker, shall be counted as a vote for such person, *if placed in the proper space or spaces provided for that purpose*, whether or not an (X) is placed after the name of such person: Provided, however, That if such writing, stamping or sticker is placed over the name of a candidate printed on the ballot, it shall render the *entire vote* in *said office block void.*" (Italics supplied.) It is argued that, inasmuch as the 30 stickers above mentioned were not placed over the name of a candidate printed on the ballot, these votes are legal. In our opinion, this proviso has no application to the situation before us. It is designed to cover cases where the names of more than one candidate for any office are printed on the ballot or where more than one person is to be elected—for instance, three school directors, or two county commisisoners. In such cases the placing of a sticker over the name of one candidate renders the *entire vote in the office block* void.

As to these 41 ballots, therefore, the action of the recount board in rejecting them is sustained, and the exceptions filed thereto should be dismissed.

Concerning the third general class, where the voter wrote in the name of his candidate for supervisor in the proper space, but put a check mark after it instead of leaving it blank or a cross mark, and where one of such ballots in each of the other office blocks indicated his choice by a check mark instead of a cross mark—let us say that we believe these two votes should be counted for Mr. Rile, because section 1223 of the Pennsylvania Election Code of June 3, 1937, provides that where a name is written in the proper space it shall be counted as a vote ". . . whether or not an (X) is placed after the name of such person: . . ." and also, "Any ballot marked by any other mark than an (X) in the spaces provided for that purpose shall be void and not counted . . . ." etc. The check mark can either be regarded as emphasizing the voter's intention, or disregarded as surplusage. Furthermore, "Even if a ballot be improperly marked for any one candidate on the ticket it is not invalid as a whole. It must be counted for all candidates for whom it is properly marked": Gegg's Election, 281 Pa. 155, 164.

We are, therefore, of the opinion that the exceptions to these two ballots should be sustained, and the votes counted for Mr. Rile.

In the fourth class, there are seven ballots rejected by the recount board, where the name of Ross G. Rile was written in or the sticker was inserted in the proper space, but where the voter made a pencil mark, cancelled with pencil marks, struck out with pencil marks, drew his pencil through the name of B. Frank Cassel printed on the ballot, and/or through the words "Republican" or "Democrat" also printed on the ballot, following Mr. Cassel's name.

The Pennsylvania Election Code of June 3, 1937, P. L. 1333, sec. 1223, 25 PS §3063, provides, inter alia,

that "Any erasure or mutilation in the vote in any office block shall render void the vote for any candidates in said block, but shall not invalidate the votes cast on the remainder of the ballot, if otherwise properly marked."

The recount board rejected these seven ballots for the reason that they considered the covering of Cassel's name and "Republican" and "Democrat" as printed on the ballot with canceling pencil marks as an erasure or mutilation voiding the ballot.

We do not consider such a striking out with pencil marks a mutilation of the ballot, because "mutilation" in its strict legal sense may be defined: "to cut off or deprive of an essential part; to break off, to remove, expunge, so as to render incomplete or imperfect"; the main idea being the removal of an essential part so that the whole is rendered incomplete.

We do, however, agree that such canceling marks are an erasure by pencil marks within the meaning of this clause of the act. Webster's New International Dictionary defines "erase" as follows: "(1) To rub or scrape out, as letters or characters written . . ., to efface; to expunge; *to cross out;* (2) to obliterate, expunge, blot out". In Election for Assessor in Newberry Township, 187 Pa. 297, where diagrams of the ballots appear in the Supreme Court Report showing lines drawn through the candidates' names, the Supreme Court, at page 300, said: ". . . *the names . . . were erased with a pencil mark . . .";* and the ballots were rejected for other reasons, also. (Italics supplied.)

Under the election law, the voter has the right to make cross marks for the candidates of his choice, or insert whatever names he desires by writing in or by means of a sticker in the proper spaces provided on the ballot, but he may not erase, mutilate, deface, or spoil a ballot. If he does, he may request a new one, as indicated on the instructions on each official ballot, "If

you spoil your ballot, do not erase but ask for a new ballot."

If voters choose to disregard the mandates of the law, by erasing or mutilating the ballot, and adopt an arbitrary method of marking their tickets other than that designated by the law, they disenfranchise themselves, and neither courts of justice entertaining election contests, nor election officers declining to count such votes, can be accused of any disenfranchisement of the voter, who has lost his vote by his own disregard of the law.

Our opinion is that these seven ballots in the office block for supervisor contain erasure by pencil marks and should not be counted. We must sustain the recount board and dismiss the exceptions.

We now arrive at the fifth class, six ballots rejected by the recount board, where the name of the candidate was written in or the sticker was placed in the proper space, but also where a cross mark was made after "B. Frank Cassel, Republican". These votes were clearly and properly rejected, because the voter voted for both candidates. We need do no more than quote a portion of section 1223 which reads:

"If an elector shall mark his ballot for more persons for any office than there are candidates to be voted for for such office, or if, for any reason, it may be impossible to determine his choice for any office, his ballot shall not be counted for such office. . . ."

In the sixth class we have four votes rejected by the recount board where there was an evident erasure by the rubbing out of a cross mark in one of the voting squares for supervisor and a cross mark placed in another voting square in the same office block. As quoted above under section 1223, "Any erasure or mutilation in the vote in any office block shall render void the vote for any candidates in said block, . . ." As the erasure is obvious, the vote is void and the board should be sustained in rejecting these four votes.

We need only say that the recount board was correct in rejecting one ballot of the seventh class, where the name was written in ink. Section 1223 provides: "Any ballot that is marked in ink or by anything but pencil or indelible pencil shall be void and not counted."

Numerous other exceptions were filed, but only mentioned in the argument, and we find no merit in them.

Therefore, in the North district, the exceptions of Ross G. Rile to class III—two votes—should be sustained, and all other exceptions filed by either contestant to the return of the recount board in this district should be dismissed.

The recount board in the North district rejected 62 votes. Sixty-one of these have been the subject of exceptions. Of these 61 votes 54 were for Rile, one for Cassel, and six were marked for both candidates. Of the 54 votes rejected for Rile, the court has sustained two as valid. Both of these votes are for "Ross G. Rile" and should be added to his votes of 287, as computed by the recount board, making a total of 289 votes in the North district for "Ross G. Rile". The vote for B. Frank Cassel in this district remains the same as computed by the recount board, at 150 votes.

In the West Ambler district, the recount board rejected 13 ballots. Four were rejected for the reason that the name of a candidate for supervisor was written in, but not in the space provided on the ballot, and for the further reason that a large cross mark had been drawn through the entire office block. The remaining nine were rejected because the voter had drawn a large cross mark through the entire office block for supervisor.

Concerning the four votes rejected by the recount board, where the candidate's name was written in immediately under the printed name of B. Frank Cassel, and in the space provided for a vote for Mr. Cassel as "Republican", we have already indicated under gen-

eral classes I and II, in the North district, that such name must be written in the space provided; otherwise it is invalid. But there is another reason for rejecting these four votes, which likewise applies to all 13 votes rejected by the recount board, because the voter, after writing in the candidate's name, made a large cross mark extending over the entire office block for supervisor. All of these large cross marks are practically in the middle of the office block for supervisor and extend from approximately the top of the office block to the bottom. They are not large cross marks extending in the squares for voting on the right side of the office block, but approximately through the middle of the entire office block. While these 13 ballots may not be classified as ballots so marked as to be capable of identification, nevertheless they are ballots where the intention of the voter is impossible to determine, because he placed canceling cross marks over the entire office block. Some may have made the large cross mark first and then written in the name. Others may have first written in the name, then changed their minds and made a large canceling cross mark over the entire office block. In either case, all of them are ballots which in our opinion fall within section 1223 under the clause ". . . if, for any reason, it may be impossible to determine his choice for any office, his ballot shall not be counted for such office, . . ."

As to these 13 ballots rejected by the recount board, the exceptions should be dismissed, and the vote not counted.

There is only one other exception remaining wherein there is any merit and that is Mr. Rile's exception to one ballot counted by the recount board in the West Ambler district, where the cross mark in the straight party column for Republican is greatly exaggerated so as to be capable of identification. This ballot contains but one cross mark and that is in the straight party

column for Republican. Such cross mark is almost twice as large as the party square and extends far beyond such square. It is over a quarter of an inch wide in both parts and has been filled in by scribbling with a soft lead pencil. In one place the scribbling has broken through the paper of the ballot. Each of its four ends contain cross scribbling. It is, in brief, a grossly exaggerated cross mark, each branch being over a quarter, almost a half-inch wide, and filled in with heavy scribbling. The lower two branches extend a half inch below the party square.

Section 1223 provides "That no vote recorded thereon shall be declared void because a cross (X) mark thereon is irregular in form," and also "No ballot which is so marked as to be capable of identification shall be counted".

We are firmly of the opinion that this ballot, by reason of the unusual and grossly exaggerated cross mark, is capable of identification and should not be counted. In McCaffrey's Appeal, 337 Pa. 552, 559, the Supreme Court said:

". . . not every mark which may separate and distinguish a ballot will necessarily result in a declaration of invalidity, but only such marks as cannot be reasonably supposed to have been made by the voter except for the very purpose of distinguishing his ballot, and which are appropriate to that end."

We can reasonably see no other reason for such an unusual marking except for the very purpose of distinguishing his ballot, and must sustain the exception and not count such vote.

Therefore, in the West Ambler district, the exception of Ross G. Rile to one vote counted by the recount board for B. Frank Cassel should be sustained, and all other exceptions filed by either contestant to the return of the recount board in this district should be dismissed.

The recount board in the West Ambler district rejected 13 votes, all of which were apparently for Mr. Rile. The court has sustained Mr. Rile's exception to one ballot for Mr. Cassel. Therefore, the total vote for B. Frank Cassel, as computed by the recount board, should be reduced by one vote, from 175 to 174 votes. The vote for Mr. Rile should remain the same, Ross G. Rile, 9 votes, and Ross Rile, 3 votes.

From the foregoing, the court has found error, and it is our duty to correct, compute, and certify the votes justly to the county board of elections.

Therefore, the county board shall correct its entries previously made in its returns to the county in accordance with the following computation:

### Whitpain Township, North District
### Supervisor

| | |
|---|---|
| B. Frank Cassel | 150 votes |
| Ross G. Rile | 289 votes |
| Ross Rile | 20 votes |
| R. G. Rile | 1 vote |
| Ross Reihl | 1 vote |
| Ross Riles | 1 vote |
| G. Ross Rile | 1 vote |
| Ros G. Rile | 1 vote |
| Ross M. Rile | 1 vote |
| Ross G. Reil | 1 vote |
| Dr. Ed. Reil | 1 vote |

### Whitpain Township, West Ambler District

| | |
|---|---|
| B. Frank Cassel | 174 votes |
| Ross G. Rile | 9 votes |
| Ross Rile | 3 votes |

The above computation includes only the ballots placed in the ballot boxes and may not include any soldier votes received by mail.

We further certify that substantial error was committed in the computation of the votes cast on the ballots contained in the ballot boxes in both election districts, because the recount board rejected 62 ballots in the North district and 13 in the West Ambler district. The prothonotary, therefore, shall return to petitioners the sum of $50 in each district; or if petitioners shall have filed bonds in lieu of cash, mark said bonds canceled, and notify petitioners that he has done so. As both of these petitions were filed with probable cause, the costs shall be paid by the County of Montgomery. The fee of the recount board for both districts is hereby fixed at $25 for each member, to be taxed as part of the costs.