## McCaffreys' Appeals.

Argued January 15, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Elder W. Marshall,* with him *James H. Duff* and *Reed, Smith, Shaw & McClay,* for appellants, No. 54, and for appellees, No. 59.

*James A. Wright,* with him *John F. McDonough* and *George Raskin,* for appellees, No. 54, and for appellants, No. 59.

554

OPINION BY MR. JUSTICE PATTERSON, March 25, 1940:

These appeals are from the order of the Court of Common Pleas of Allegheny County on appeal from the order of the County Board of Elections following a recount of the vote in the First Election District of the First Ward of the Borough of Carnegie for the candidates for council at the election held November 7, 1939.

So that organization of the Borough Council might be effected without undue delay this Court entered an order on January 18, 1940, declaring Michael J. Mc-Caffrey elected to the office of member of Council of the Borough of Carnegie, opinion to be filed later. We now state the reasons for our conclusion.

Two members of council were to be elected in the first ward at the November 7, 1939, election. Michael J. McCaffrey was one of two Democratic candidates and Joseph P. McCaffrey was one of two Republican nominees. The original return of the county return board showed 433 votes for Michael McCaffrey in the first district as compared with 331 for Joseph McCaffrey, giving the former a plurality of 9 votes over the latter when added to the votes cast for these candidates in the two other districts of the first ward.

Upon petition of appellants, Mary A. McCaffrey et al., under section 1701 of the Act of June 3, 1937, P. L. 1333, the ballot box was opened by the court of common pleas and a recount was made. Corrections were made by the court and the correct count was certified to the county board in accordance with section 1703. The county board revised its return in obedience to the court's certificate, reducing the plurality of Michael McCaffrey to 2 votes.

Thereupon, Mary A. McCaffrey et al. appealed from the "order or decision" of the county board changing its entries, asking the court to direct the board to exclude 4 ballots passed upon and counted by the court for Michael J. McCaffrey in the prior proceeding, which ballots appellants alleged were erroneously so counted

by the court. Section 1407, under which the appeal was taken, provides, in subsection (a), that "Any person aggrieved *by any order or decision of any County Board* regarding the computation or canvassing of the returns of any primary or election, *or regarding any recount . . . thereof under sections 1701, 1702 and 1703 of this act,* may appeal therefrom within two days after such order or decision shall have been made, . . . to the court of common pleas of the proper county, setting forth why he feels that an injustice has been done, and praying for such order as may give him relief."

The court below took the position that it had jurisdiction on an appeal under this section to review the matters de novo and reverse its decision in the prior proceeding under section 1701 because of the provision in subsection (b) that "The court on an appeal shall have full power and authority to hear and determine all matters pertaining to any fraud or error committed in any election district to which such an appeal relates, and to make such decree as justice and right may require." The court rejected 2 of the 4 ballots in question and ordered the returns of the first district re-corrected accordingly. As thus changed, the total returns for the first ward gave each of the candidates the same number of votes. Both appellants and appellees in the proceeding appealed.

Section 1407, subsection (a) provides only for appeals from "any order or decision" of the county board "regarding the computation or canvassing of the returns" or "regarding any recount or recanvass thereof." The provision, in subsection (b), that "the court on appeal shall have full power and authority to hear and determine all matters pertaining to any fraud or error committed in any election district to which such appeal relates" must be considered in connection with subsection (a), and so considered, it gives the court authority on appeal merely to hear and determine matters pertaining to any fraud or error in orders or de-

cisions of the county board. Thus construed, the statute limits the jurisdiction of the court where the appeal is from an order or decision of the board regarding a recount or recanvass under sections 1701, or 1702, and 1703 to an inquiry as to whether the board, either fraudulently or mistakenly, has failed to correct its return in accordance with the decision of the court in the prior proceeding, as required by section 1703. It does not authorize the review of matters of fraud or error already judicially passed upon in the earlier proceeding nor of matters of fraud or error in the orders or decisions of the court in such proceeding. And, the authority and jurisdiction of the court on such an appeal is not to be regarded as extended beyond these limitations by the addition of the words "and to make such decree as justice and right may require." As was said in *Twenty-Eighth Congressional District Nomination*, 268 Pa. 313, in construing section 15 of the Act of July 12, 1913, P. L. 719, as amended by the Act of July 9, 1919, P. L. 852, at 320, the power to make such a decree "necessarily means only the making of a right and just decree regarding the matter the court is expressly authorized then to investigate."

The court below construed the statute as requiring precisely the same matter, i. e., fraud or error in the computation of the votes, to be twice gone over by the same tribunal, an anomalous situation which it cannot be supposed the legislature intended, in view of the plain language of the sections in question, and particularly in view of the manifest purpose of the Code that computation proceedings shall be held promptly and disposed of expeditiously without the protraction which such successive appeals would necessarily involve. The power given the court on an appeal under section 1407 to "hear and determine all matters pertaining to any fraud or error committed in any election district" is, with respect to the matters within the scope of review on such appeals, exactly the same as the power given

in proceedings under sections 1701, 1702, and 1703, where the court is charged with the duty to discover any fraud or error in the computation or canvassing of the returns, and the duty of the court to "make such decree as right and justice may require" on an appeal under section 1407, is not greater than the provision in section 1703 that the court in recount proceedings shall "correct, compute and certify the votes of such election district justly, regardless of any fraudulent or erroneous returns made by the election officers thereof": see *Twenty-Eighth Congressional District Nomination,* supra. The powers and duties of the court being the same on appeals under section 1407 as in proceedings under 1701, it must be supposed that the legislature intended the scope of review on appeals under the former section to be limited as already indicated.

In this latter connection, it is significantly provided in section 1703, subsection (b), that "No order or decision of the court under the provisions of sections 1701 and 1702 of this act, shall be deemed a final adjudication regarding the results of any primary or election, so as to preclude any contest thereof under the provisions of this article. . . ." By plain implication the legislative intent is here expressed that orders or decisions of the court in proceedings under these sections shall be deemed final adjudications, except as otherwise expressly provided.

Although not necessary to the decision, and not strictly within the scope of review by appellate courts in cases of this kind (*Smith's Petition,* 292 Pa. 140; *Springdale Election Recount,* 307 Pa. 312; *Rimer's Contested Election,* 316 Pa. 342; *Carroll's Appeal,* 336 Pa. 257), we state it to be our conclusion that all four of the ballots in dispute were properly counted for Michael J. McCaffrey by the court in the recount proceedings.

Of the four ballots in question, two, denominated "D" and "E," were objected to for the reason that they were not found inside the ballot box when it was opened by

the court in the recount proceeding, but in a separate package with the unused ballots and stubs of used ballots where they were placed by the local election board following its count. The failure to return the ballots to the box was apparently the result of an honest mistake on the part of the local board, and there was no evidence whatever of fraudulent intent or that they had been tampered with in any way. Ballot "D" was objected to on the further ground that the blocking-out of squares after the names of several candidates and the insertion of the word "omit" at such blocked-out squares, by the voter, rendered the ballot capable of identification; ballot "E" was objected to for the additional reason that an "x" was placed in the squares opposite the names of both the Republican and Democratic parties, in the straight party column.

The two other ballots in dispute have been labeled "I" and "J." The validity of ballot "I" was attacked on the ground that the mark in the square after the name of Michael J. McCaffrey was a mark other than an "x," and on the further ground that the mark used was such as to make the ballot capable of identification. The alleged defect in ballot "J" consists of an indelible smear or smudge in the party column, apparently the result of an attempt to erase a mark made in the square opposite the name of the Republican party.

There being, in our opinion, no provision in the Election Code requiring the rejection of ballots "D" and "E" merely because of the irregularity of the election officials in not returning them to the ballot box, it is our conclusion that the court below properly refused to exclude them on this ground, in the absence of any reason to suspect fraud or tampering. We approve of the reasoning in *Middendorf's Case*, 4 District Reports 78, relied upon by the court below, in a substantially similar situation, and agree with the court below that "To hold otherwise would be to give rise to fraud by an election board by not having some ballots placed in the box

in order that they might not be counted." The other objections made to these ballots are likewise untenable.

It is manifest from a mere reading of section 1223 of the Act of 1937 that not every mark which may separate and distinguish a ballot will necessarily result in a declaration of invalidity, but only such marks as cannot be reasonably supposed to have been made by the voter except for the very purpose of distinguishing his ballot, and which are appropriate to that end. We find nothing in the markings of ballots "D" and "E" rendering them capable of identification within the meaning of section 1223 as thus construed.

The objection to ballot "D" by reason of the blockings-out is answered by the provision in section 1223 that "Any erasure, or mutilation in the vote in any office block shall render void the vote for any candidates in said block, *but shall not invalidate the votes cast on the remainder of the ballot,* if otherwise properly marked."

Since ballot "E" is otherwise properly marked, we think the court below properly refused to reject it by reason of the fact that it contained a mark in the square after each of the party names in the straight party column. In such instances, the marks should be regarded as cancelling one another, leaving the ballot precisely as if there were no marks whatever in the straight party column.

The intent to vote for Michael J. McCaffrey being, in our opinion, clear, we are inclined to the view that the mark in the square after Michael J. McCaffrey's name on ballot "I" should be regarded, as the court in the recount proceeding must have considered it, not as a mark other than an "x," but rather an "x" merely irregular in form within the provision that "no vote . . . shall be declared void because a cross (x) mark is irregular in form." Nor can the irregularity of this marking be regarded as making the ballot "capable of identification" within the meaning of section 1223, in

view of what has already been said as to the meaning of that phrase as used in the act. It follows that this ballot was properly counted for Michael J. McCaffrey in the recount proceedings.

In answer to the objection to ballot "J" on the ground that the smudge or smear in the straight party column makes it capable of identification, it is only necessary to point to the provision that "Any erasure, mutilation, or defective marking of the straight party column at November elections shall render the entire ballot void, *unless the voter has properly indicated his choice for candidates in any office block in which case the vote or votes for such candidates only shall be counted.*" This provision also answers the objection to ballot "E," considered supra.

In stating our conclusion as to the merits of this case, we reiterate what was said in *In Re Opening of Ballot Box in Third Election District, Forty-First Ward, Philadelphia,* 328 Pa. 535, at 541, respecting our review of election computation proceedings: "It should be stated that our consideration of this proceeding is not to be considered a precedent for our review of election counts."

The appeal of Mary A. McCaffrey et al., is dismissed, the appeal of Michael J. McCaffrey and Harold V. Picard is sustained, and the order entered January 18, 1940, declaring Michael J. McCaffrey elected to the office of member of Council of the Borough of Carnegie is confirmed. Costs in both appeals to be paid by appellants Mary A. McCaffrey et al.