## In re Dunmore Borough Election

*Frank J. McDonnell, Carlon M. O'Malley,* and *Raymond T. Law,* for appellant.

*Maurice V. Cummings* and *Otto P. Robinson,* for appellee.

LEACH, P. J., and LEWIS, J., September 25, 1941.—After 11:40 p.m., September 9, 1941, a bench warrant issued to the sheriff upon complaint that the election board of the second district of the second ward in the Borough of Dunmore were committing a fraud and had not computed their returns. The sheriff arrived at the place after 12 midnight on the morning of the 10th, gathered up all papers, and brought the machines, the records, and the election officers before the court. The testimony was taken at the time and the judge of the election board stated that the returns on the machines were not the correct election returns. As the hour was late the board were permitted to go upon furnishing bail to appear the next day.

The next day the election officers appeared and completed their returns, after saying, first, that they did not need the machines opened, and, second, that they would like to open the machines. After the returns were completed they refused to sign them, certifying as follows: "I refuse to sign the returns because of a discrepancy between the list of voters and those recorded on the machines. Judge, Casper Caetano; Maj. In-

spector, Andrew Malia; Min. Inspector, Charles Banno."

At a later hearing on Saturday, September 13th, the board was unable to explain any reason for the discrepancy. They were still unable to explain the reason for the discrepancy before the return board on September 18th. The return board opened the machines and recorded the vote as shown by the machines. This appeal followed.

At the hearing before the court on appeal, the election officers for the first time stated that a lot of names were kept by the clerk for the minority inspector on a sheet of scratch paper after the list of Democratic voters had been nearly filled, and that this sheet had been lost. On the numbered list of voters from nos. 569 to 678, inclusive, the names of the voters appear in alphabetical order. Thirty pages, about 120 votes, on the voters' list had been signed by persons other than the voters, several pages by the judge of election. The judge had been unable to attend to his duties because he was in charge of a machine. Even with this added list, the voters' register showed 765 signatures and the machines showed 862 votes cast. The oaths of the officers had never been signed.

Some testimony of witnesses was heard before the court to the effect that certain absent people had been voted and that one person whose funeral was the morning of that day was listed as voting. It is questionable whether any such evidence could be admitted. The theory upon which it was heard was that it might cast light on the question of the presence of fraud.

The Pennsylvania Election Code of June 3, 1937, P. L. 1333, sec. 1404(b), provides in part as follows:

"If, upon consideration by said return board of the returns before it from any election district and the certificates aforesaid, it shall appear that the total vote returned for any candidate or candidates for the same office or nomination or on any question exceeds

. . . the total number of persons belonging to that party who voted in said district . . . , such excess shall be deemed a discrepancy and palpable error, and shall be investigated by the return board, . . . and such excess shall authorize—(a) the summoning of the election officers, overseers, machine inspectors, and clerks to appear forthwith with any election papers in their possession; (b) the production of the ballot box before the return board, and the examination and scrutiny of all of its contents, and all of the registration and election documents whatever, relating to said district, in the presence of representatives of each party and candidate interested who are attending the canvass of such votes; and the recount of the ballots contained in said ballot box, either generally or respecting the particular office, nomination, or question as to which the excess exists, in the discretion of the return board; (c) the correction of the returns in accordance with the result of said recount; (d) in the discretion of the return board, the exclusion of the poll of that district, . . . if the ballot box be found to contain . . . more ballots than the number of voters who voted at said election, or more ballots of one party than the number of voters of that party who voted at said election; (e) a report of the facts of the case to the district attorney where such action appears to be warranted."

Where there are considerably more votes recorded on a machine than appear on the numbered list of voters, or considerably more than the number in the voters' list signed by the voters themselves, there are more votes than the total number of persons who voted at the election.

Under such a state of facts there is no real return of an election. No data exists from which a correct list of the persons who voted could be made. Fraud is apparent upon the face of the returns. Thereupon it is the duty of the return board to throw out the district. The court on appeal has the same powers that the re-

turn board had in the first instance: McCaffreys' Appeals, 337 Pa. 552.

Testimony was taken in this case of persons who voted at the election. We exclude this testimony from consideration in this opinion. The return board and the court on appeal cannot go into the question whether fraud was committed by voters or impersonators of voters. To take such evidence would lengthen the hearings at the primaries beyond the time that the general election should be held. The inquiry is on the question of whether the election board so conducted the election in such manner that a fair return can be made from their records. The persons who may be present and the scope of the inquiry is set forth in the Pennsylvania Election Code of 1937, sec. 1404 (b), supra.

From the facts recited in this case it appears that the election officers:

1. Did not subscribe to their oaths;

2. Did not sign any election returns;

3. Had a greater number of votes on the machines than the number of voters who signed their names to the voters' list, showing a greater number of ballots than persons who voted at the election;

4. Added names to the voters' list themselves;

5. Certified that a correct return could not be made for the reason that a greater number of names appeared on the machines than there were records of persons who had voted.

Under the above state of facts there was no real election conducted in the second district of the second ward of the Borough of Dunmore. No data exists from which a correct return of the persons who voted could be made. Fraud is apparent upon the face of the returns.

We believe that the votes of the entire return of the second district of the second ward of the Borough of Dunmore should be thrown out and excluded from the returns of the primary election held September 9, 1941, in Lackawanna County.

Now, September 25, 1941, the appeal of Thomas Ferguson is sustained, and the returns of the second district, second ward of the Borough of Dunmore, are excluded from the results of the primary election held September 9, 1941, in Lackawanna County. The evidence taken on the return of the bench warrant is ordered sent to the district attorney for action against the election officers.