## Weber Appeal.

38

Argued March 18, 1960. Before JONES, C. J., MUS-MANNO, JONES, COHEN, BOK and EAGEN, JJ.

*William J. Joyce*, with him *Leroy R. Rickard*, and *Wiesen, Cusick, Madden, Joyce, Acker & McKay*, for appellant.

No argument was made nor brief submitted for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, April 19, 1960:

At the municipal election on November 3, 1959, there were two candidates for the office of Supervisor in Springfield Township, Mercer County, whose names appeared on the ballot, viz., Fred M. Coryea, the nominee of the Democratic party, and Edward Weber, the nominee of the Republican party. John Kopf, whom Weber had defeated at the Republican Primary, became a write-in candidate at the election.

The Mercer County Board of Elections, sitting as the County Return Board, computed the votes cast for the office of Supervisor in the two Springfield Township election districts as follows:

|  | *Springfield Twp. East* | *Springfield Twp. West* |
| --- | --- | --- |
| Fred M. Coryea, Democrat | 77 | 73 |
| Edward Weber, Republican | 91 | 96 |
| John Kopf (Write-in) | 25 | 138 |

According to this tabulation, Weber was high with a total of 187 votes, Kopf, second with a total of 163 votes and Coryea, third with a total of 150 votes. Neither the Election Board of the East District of the Township nor the County Return Board counted as votes for Kopf 11 write-ins of various misspellings of his surname and neither Board counted 16 gummed stickers upon which the name of John Kopf was printed and which were affixed to a folded card that had been inserted by some unidentified person in the write-in slot of the voting machine in the East election district from which the card was removed by the machine's custodian sometime during the afternoon of Election Day.

Three qualified electors of the Township filed a petition in the court below, under Section 1702 of the Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333, Art. XVII, 25 PS §3262, in which they alleged that error, although not apparent on the face of the general return, had been committed in the canvass of the votes cast in the East Springfield Township election district for the office of Supervisor and that the County Return Board had failed to count all of the sticker or write-in votes for Kopf for the office of Supervisor. The petitioners prayed the court to recanvass the votes cast in the district and to declare Kopf elected. An identical petition was presented simultaneously requesting a recanvass of the votes cast for Supervisor in the West Springfield Township election district. Only the recanvass of the vote in East Springfield Township election district is any longer important.

The court granted the prayers of the petitions and, upon its recanvass of the votes for the office of Supervisor shown on the voting machines in the two districts, counted the 11 additional write-in votes for Kopf under various misspellings of his name and, in addition, counted also as votes for him, the 16 gummed stickers,

bearing his printed name, which were not affixed to the paper roll on the voting machine, but were attached to the folded card removed from the voting machine in the East Springfield Township election district by the machine's custodian as above stated. As a result of this recanvass, the computation arrived at by the court credited Kopf with 190 votes, and Weber with 187 votes. The court accordingly entered an order declaring Kopf elected Supervisor of the Township. Weber filed exceptions to the order which the court overruled and entered the final order from which Weber has appealed.

The card, upon which the 16 gummed stickers bearing the printed name of John Kopf was pasted, had jammed the voting machine in the East Springfield Township election district on the afternoon of Election Day. The Election Board of the district thereupon summoned a machine custodian who opened up the write-in slot and by the use of a small file removed the card from the write-in slot designed for the recording of write-in votes for candidates for the office of Township Supervisor. The card, unfolded, was 3″ x 2″ in size. On the side folded-in there appeared the following in printing:

"For Springfield Twp. Supervisor
KINDLY CONSIDER TO
RE-ELECT JOHN KOPF
PUSH UP LEVER ABOVE NO. 13
Place Sticker in Slot
Nov. 3, 1959
Thank You"

As folded in the middle the card was 3″ x 1″ in size; one of the ends was also folded over for about a ¼″. Two of the Kopf stickers were stuck to both sides of the folded card, forming a sort of hinge across the back of the card at right angles to the long edge of the card. The other 14 stickers were stuck on one of the outer

sides of the card, being superimposed one upon another, more or less.

In addition to viewing the voting machine in each of the two election districts of Springfield Township and after examining the registering counters and the paper roll on each voting machine for write-in or sticker votes, the court conducted a hearing as a result of which it found that the 11 write-in votes appearing on the paper roll under various spellings of the name Kopf were intended to be cast for John Kopf. The testimony at the hearing did not indicate, however, in what way the cardboard to which were affixed the 16 gummed stickers, bearing the printed name John Kopf, had become inserted in the write-in slot; nor did the testimony disclose whether the stickers were affixed to the card before it was inserted in the write-in slot or after the card had been lodged in the machine.

The court found that the method for casting write-in votes in the voting machine in use in the East Springfield Township election district was as follows: On the face of the machine the names of the two nominated candidates for Township Supervisor appeared on small printed cards respectively opposite the Democratic and Republican levers, which were arranged vertically. An elector could vote for either of the nominated candidates by pulling down the small lever at the number of the candidate of his choice. Above those levers there is a metal slide or cover, which, when pushed up, exposes a slot, vertical and slightly diagonal about 2″ x ½″ in size. Underneath this slot and on the reverse side of the face of the machine, there is a roll of brown paper. A voter desiring to write in the name of a candidate would push the slide or slot cover upward and either write on the paper roll underneath the slot the name of the candidate for whom he wished to vote or affix on the paper roll a gummed sticker bearing his candidate's printed name. As the voter releases the slide

it falls back into place, again covering the slot. When the curtain lever is pulled by the voter to register on the machine all his indicated votes, the paper roll turns about an inch and a half leaving the roll blank immediately under the slot and ready for the next write-in vote that might be registered by a succeeding voter.

When the voting machine is operating normally, write-in or sticker votes appear on the paper roll in a vertical line about 1½" apart. The paper roll taken from the back of the voting machine of the East Springfield Township election district for the office of Township Supervisor showed two long intervening blank spaces between write-ins or stickers thereon, one such space being about 17 inches in length and the other about 20 inches.

The court below concluded that the two long blank spaces on the paper roll between write-ins or stickers on the East Springfield Township voting machine for the office of Township Supervisor indicated that between 20 and 30 persons had attempted to vote for the office by the write-in method but that their stickers or penciled names did not appear in their proper place on the paper roll due to the folded card which obstructed the operation of the machine and that the 16 stickers bearing Kopf's name that were pasted, one more or less on top of another, were attempts by separate voters to cast write-in votes for Kopf by means of the stickers.

If this were a matter to be decided on inference derived by reasoning from certain proven facts, it would be difficult for us to say that the result reached by the hearing judge was either illogical or unrealistic. The blank spaces on the paper roll of the voting machine for the East Springfield Township Election District, upon which write-ins or printed-name stickers should have appeared in the normal operation of the voting machine, leads, not unreasonably, to the conclusion that the stickers, which were pasted (one upon another) on

the card inserted in the write-in slot, represented attempts of electors to perfect their write-in votes by attaching their stickers to the paper roll but which the card prevented their doing. Indeed, it may even be surmised that the insertion of the card in the write-in slot was the work of a miscreant hostile to Kopf's candidacy for he, being a sticker candidate, was the one to be harmed by a blocking of the write-in slot. But, this is a recount proceeding under the provisions of the Pennsylvania Election Code and the validity of the votes canvassed and computed is to be determined in strict accordance with established law.

It was held long ago, in a case involving the use of stickers, under the General Ballot Act of June 10, 1893, P. L. 419, that "The only prescribed mode of voting for persons 'whose names are not already on the ballot,' is 'by inserting (their names) in the blank spaces prepared therefor' . . . . The name or names, as the case may be, cannot be inserted anywhere in said right hand column [of the ballot], but only in the appropriate blank spaces prepared therefor. The voter is not authorized to insert anything in any part of said column, save and except in the blank spaces prepared for names not already on the ballot.": *McCowin's Appeal,* 165 Pa. 233, 236-237, 30 A. 955 (1895). The foregoing was quoted with approval and followed in *Lawlor's Appeal,* 180 Pa. 566, 570, 37 A. 92 (1897), a case likewise involving the use of stickers.

While *McCowin's Appeal* and *Lawlor's Appeal,* supra, were concerned with paper ballots, the law is no less specific in its prescription as to where a write-in, whether by hand or sticker, must be written or affixed on a voting machine. The Pennsylvania Election Code,* in prescribing the manner of voting in districts where

* Act of June 3, 1937, P. L. 1333.

44

voting machines are used, provides in Section 1216(e), 25 PS §3056(e), that, "A voter may, at any primary or election, vote for any person for any office, for which office his name does not appear upon the voting machine as a candidate, by an irregular ballot containing the name of such person deposited, written or affixed in or upon the appropriate receptacle or device provided in or on the machine for that purpose, *and in no other manner.*" (Emphasis supplied). It is evident that no material differentiation can reasonably be made between paper ballots and voting machines in respect of the requirements for voting by write-in or sticker for a candidate whose name does not appear upon the ballot or voting machine. In *Parente Appeal,* 390 Pa. 249, 253, 135 A. 2d 62, we expressly recognized that the effect "of write-in votes can be no different whether they are written in on voting machines or on paper ballots."

The technicalities of the Election Law (and they are many) are necessary for the preservation of the secrecy and purity of the ballot and must, therefore, be meticulously observed. Thus it is, that any write-in or sticker which covers more of the ballot than the blank space provided therefor invalidates the vote for the office under which the write-in or sticker appears. See *McCowin's Appeal* and *Lawlor's Appeal,* supra. If so slight a departure from the requirements for the writing in or affixing by sticker of the name of a candidate (not otherwise appearing on the ballot) invalidates the vote for the office to which the write-in or sticker candidate aspires, surely stickers which are in no way affixed to the paper roll back of the slot for the reception of write-ins or stickers on a voting machine cannot lawfully be accredited as votes for the person whose name is printed on the stickers. A misplaced write-in or sticker, whether on a ballot or on a voting machine, is of no legal efficacy whatsoever. To hold

otherwise would render facile the way to fraudulent voting and the thwarting of the electorate's will.

What this court said in *Rodgers' Contested Election*, 234 Pa. 512, 519, 83 A. 476, is presently peculiarly apposite: "While it may be that the Court in this instance correctly guessed the intention of the voter, yet the fifty-seven mutilated ballots were not marked in accordance with the instructions contained in the Act of Assembly, and under the well established doctrine in this State they should not have been counted; to permit the counting of such ballots would be a precedent fraught with grave dangers for the future."

The fact stands out in this case plainly and undeniably that the 16 Kopf stickers which were pasted on the card, that, for a time, filled the space of the write-in slot of the voting machine, were never affixed to the write-in roll of the machine. In accrediting them as votes for Kopf upon the recanvass, the court counted and computed as validly cast votes more votes than were actually recorded on the voting machine on the registering counters and the paper roll for write-ins. It follows, therefore, that the vote for John Kopf, as found by the court below upon the recanvass, must be reduced by 16 votes. Accordingly, Kopf received 174 votes to 187 for Weber, who was the successful candidate and to whom a certificate of election should be issued.

Order reversed and record remanded with directions that a certificate of election to the office of Supervisor of Springfield Township, Mercer County, be issued forthwith to Edward Weber; the costs of this appeal to be borne by the county.