Reading Election Recount Case.

Argued January 30, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Irving R. Segal,* with him *Robert L. Kendall, Jr., Robert F. Shapiro, Adam B. Krafczek, Russell J. La-Marca,* and *Schnader, Harrison, Segal & Lewis,* for Reading Defense Committee, appellant.

*Paul N. Schaeffer* and *Darlington Hoopes,* for Berks County Citizens Association, appellee.

OPINION BY MR. JUSTICE EAGEN, February 20, 1963:

On September 25, 1962, a special referendum election pursuant to the Optional Third Class City Charter Law (Act of July 15, 1957, P. L. 901, 53 P.S. §41101 et seq.) was held in the City of Reading, Pennsylvania, to determine whether or not a Council-Manager Plan of government should be adopted in that city. Paper ballots were used to submit the question to the electorate and more than 28,000 votes were cast. The final result, as indicated by the open returns, gave a plurality of 99 votes against the adoption of the plan.

Subsequently, petitions were filed with the Court of Common Pleas of Berks County to recount the ballots contained in forty-one election boxes. During the recount proceedings, challenges were recorded by parties in interest to the validity of a total of 431 ballots. The challenges all concerned the manner in which the ballots involved were marked by the voter in casting

his or her vote on the question. No fraud was involved. The rulings of the court with respect to the validity of a certain number of these ballots resulted in a plurality of 26 votes in favor of the adoption of the plan.

This appeal challenges the legal correctness of the lower court's ruling declaring that certain ballots were void and should not be counted in the final tabulation of the vote.

Each ballot contained the following question: "Shall the Council-Manager Plan of the Optional Third Class City Charter Law, providing for seven (7) Councilmen to be elected at large, be adopted by the City of Reading"?

Opposite the above question were two double blocks or squares, one above the other. The upper left square contained the printed word "YES" and the lower left square contained the printed word "No." Immediately adjacent to these squares were blank squares wherein the voter could indicate his or her vote. On each ballot specific instructions were printed to guide the voter in casting the ballot. These included the following: "Use either a cross (X) or a check (√) mark." The instructions did not specifically indicate where the cross (X) or check (√) mark should be placed on the ballot.

It is our considered conclusion that the court below erred in ruling certain specific ballots invalid. These may be classified into two categories: 1. Those wherein the voter inserted a cross (X) or a check (√) mark in the proper voting square but in addition thereto added the word "YES" or "No" in writing in the same square; 2. Those wherein the voter inserted a cross (X) or a check (√) mark in the proper voting square and in addition thereto inserted another cross (X) or check (√) mark in the square containing the printed word "YES" or "No."

When the ballots in the foregoing two categories are counted, as they should be, the final result of the election will be changed. In Category 1, 45 ballots, which the court invalidated, are involved, 34 "No" and 11 "Yes." In Category 2, 11 ballots were declared invalid, 10 "No" and 1 "Yes."

On the question of the validity of the ballots involved the cases of *Norwood Election Contest Case*, 382 Pa. 547, 116 A. 2d 552 (1955) ; *James Appeal*, 377 Pa. 405, 105 A. 2d 64 (1954) and *Bauman Election Contest Case*, 351 Pa. 451, 41 A. 2d 630 (1945), are controlling.

The pertinent section of the Election Code, as recently amended, provides as follows :[1] "Any ballot marked by any other mark than an (X) or a ($\sqrt{}$) in the spaces provided for that purpose shall be void." In *Norwood*, supra, this Court in construing this provision unanimously ruled that where the voter placed a check ($\sqrt{}$) mark in addition to a cross (X) in the square opposite a candidate's name on the election ballot, that this irregularity did not render the ballot void.[2] As of that date the marking of a ballot by a check ($\sqrt{}$) mark was not permitted. It was the amendments to the code, by the Act of January 8, 1960, P. L. (1959) 2142, 25 P.S. §3063(a), that first permitted the use of a check ($\sqrt{}$) mark. In fact the code in effect as of the date of the *Norwood* decision provided : "Any ballot marked by any other mark than an (X) in the space provided for that purpose shall be void and not counted." As enunciated in the *Norwood* case, the power to throw out a ballot for minor irregularities should be sparingly used. It should be done only for very compelling reasons. Again, in *Bauman*, supra, we said at page 456 : "Marking a ballot in voting is a matter not

[1] Act of June 3, 1937, P. L. 1333, as amended (25 P.S. §3063(a)).

[2] For a similar factual situation, see *Bauman Election Contest Case*, supra.

of precision engineering but of an unmistakable registration of the voter's will in substantial conformity to statutory requirements."

In the instant case, the voters, on the ballots under discussion, unmistakably indicated their preferences and voted on the question by a proper mark in the proper square. The additions were mere surplusage. To say that the minor irregularities rendered the votes void, would disenfranchise these votes for very picayune reasons. In this connection it is noted that in the printed instructions on the ballot it did not say, USE A CROSS (X) OR A CHECK ($\sqrt{}$) ONLY.

Nor may the additional insertions on the ballots concerned possibly be construed to constitute identification marks. The provision in the code in respect to this subject must be construed with great liberality: *Bauman Election Contest Case,* supra. In that case, a voter inserted a cross (X) in the proper square and added a horizontal line through the (X). In two other instances, voters inserted check ($\sqrt{}$) marks as well as the cross (X) in the voting square. It was held that these additional marks did not void the ballots. Certainly, the additional insertion of a horizontal line through a cross (X) is much more susceptible to identification than the additions involved herein. See also, *McCaffreys' Appeals,* 337 Pa. 552, 11 A. 2d 893 (1940), wherein it was said at page 559: "[N]ot every mark which may separate and distinguish a ballot will necessarily result in a declaration of invalidity, but only such marks as cannot be reasonably supposed to have been made by the voter except for the very purpose of distinguishing his ballot and which are appropriate to that end." It appears unreasonable to us to say that the additions involved herein were for identification purposes, when such a large number of ballots were challenged for substantially the same reasons, and the inadequacies in the ballot instructions coincided with the reasons for the challenged votes.

Finally, in this connection we note the following significant finding and conclusion of the court below, "We are completely satisfied. . . that such errors as were discovered *are not wilful errors.*"[3]  This completely negates the fact that the marks were placed on the ballots by the voters for the purpose of identifying their ballots.  That the voter placed the marks thereon for this purpose is basic to the conclusion that they were in fact identifying marks.  See, *McCaffreys' Appeals,* supra.

The lower court reluctantly further concluded that the additional mark on the ballots referred to in Category 2, supra, constituted an erasure or mutilation of the ballot in the voting square, thereby rendering the vote void.  With this conclusion, we do not agree.

The main contention of counsel for appellee is that the amendment to the code by the Act of 1960, supra, in effect overruled the decisions of this Court previously cited herein, and constituted a clear expression of legislative intent that from the date of that enactment, a voter had to mark the ballot with an (X) or a ($\sqrt{}$) mark and nothing more.  We do not so interpret the Act of 1960.  The pertinent words involved which constituted an addition to the Act of 1937, supra, are as follows: "Provided, That all markings on the ballot are made by the same pen or pencil and that all markings on the ballot are the same type of marking either a cross (X) or check ($\sqrt{}$)." This provision does not refer to the situations involved.  It said and said only that a ballot shall be marked with the same markings throughout and with the same pen or pencil.  It did not say that any additional minor insertions would nullify a ballot.  If the legislature intended to overrule *Norwood, Bauman* and *James,* supra, language could easily have been set forth giving such expression.

---

[3] Emphasis supplied.

In conclusion, a change in the form of the government in the City of Reading may or may not be advisable, but if such is to be accomplished, let it be done by the will of the electorate and in accordance with law.

The order of the court below is reversed and it is directed that a final and corrected order be entered consonant with this opinion.

Mr. Justice BENJAMIN R. JONES dissents.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

I cannot accede to the forced rationalization resorted to in the majority opinion, the *Norwood Election Contest Case,* 382 Pa. 547, 116 A. 2d 552 (1955), or any other "authority" which flies in the face of the clear mandate of the Act of 1959, P. L. 2142 at 2148, 25 P.S. §3063(a) requiring that *"Any ballot marked by any other mark than an (X) or check ($\sqrt{}$) in the spaces provided for that purpose shall be void and not counted."* (Emphasis supplied).

The patent disregard of the legislative mandate by the courts is disruptive of the whole democratic process and shatters the delicate adjustment of checks and balances so important in our scheme of government. It is not important and of no great consequence that the government of the City of Reading may or may not be changed by the action of the majority—what is important and of great consequence is that our court has misread, misinterpreted and misapplied a clear legislative pronouncement. This is particularly true in the interpretation of the election laws which are basic to our democratic system. Hence, I am impelled to follow what Chief Justice JONES said in *Weber Appeal,* 399 Pa. 37, 44, 159 A. 2d 901, as recently as 1960: "The technicalities of the Election Law (and they are many)

are necessary for the preservation of the secrecy and purity of the ballot and must, therefore, be meticulously observed."

I dissent.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Validity of the questioned ballots is determined by §1223(a)[1] of the Election Code which provides: *"Any ballot marked by any other mark than* an (X) or a ($\sqrt{}$) in the spaces provided for that purpose *shall be void and not counted."* (Emphasis supplied.)

In language that is exact and clear, the applicable statute provides that a ballot to be valid must be marked *only* with an (X) or a ($\sqrt{}$)—nothing more or less may be marked or substituted. No deviation or exception is expressed or implied, and none, therefore, is permitted. The method for legally voting a ballot is strictly prescribed by the Legislature in whose province rests exclusive control of the electoral process.

The legislative mandate is positive and conclusive that any ballot which fails to conform to the explicit statutory requirement "shall be void and not counted". The lower court, in voiding ballots which contained more than an (X) or a ($\sqrt{}$), such as additions of "Yes" or "No" and the like, did precisely what the controlling section of the Election Code commanded.

Ballots not marked in the required manner and form may no more be construed to be valid than those recorded on homemade or unofficial ballots, or marked after the lawful closing hour of the polls or on the day after the election. The defect in each instance is sub-

---

[1] Act of June 3, 1937, P. L. 1333, §1223(a), as amended, January 8, 1960, P. L. (1959) 2142, §4, 25 P.S. §3063(a).

Prior to the 1960 amendment, the Code provided only for an (X).

stantially the same—failure to comply with the provisions of the Election Code. The result likewise should be the same—the ballot is void and the attempted exercise of franchise is legally ineffective. No hardship is imposed on the voter. If the voter undertakes to deviate from the requirements prescribed for all, he takes the risk of his failure to comply. The concern is not the possible disenfranchisement of a voter who casts his ballot in a manner not permitted by the Election Code, but rather the preservation of the sanctity of the whole election process by giving effect to only those ballots marked in accordance with the election laws (27,935 ballots out of 28,235 were so marked).

The cases relied upon by the majority lend little support to the result reached in their opinion. The *Norwood Election Contest Case,* 382 Pa. 547, 116 A. 2d 552 (1955), involved a ballot marked with a heavy (X) over a light check-mark, and held that such marking did not violate the prohibition against identifying marks. The Court did not consider or pass upon the consequences of use of a mark other than (X). In *James Appeal,* 377 Pa. 405, 105 A. 2d 64 (1954), at issue was the propriety of write-in votes under §1003[2] of the Election Code. Section 1223(a), as here involved, was there neither pertinent nor discussed.

In *Bauman Election Contest Case,* 351 Pa. 451, 41 A. 2d 630 (1945), heavily relied upon in *Norwood* and *James,* the decision rested on the portions of §1223(a) which prohibit identifying marks and which further provide that a ballot marked by an (X) irregular in form shall not be invalid. This Court there said with reference to the language of §1223(a) drawn in issue here: "This provision [which then provided solely for a mark of (X)] obviously means that if a voter uses any *other* mark than an X to indicate his choice, that 'vote' shall not be counted." Id. at 455-56, A. 2d at 632.

_____
[2] 25 P.S. §2963.

In one class of ballots here held valid by the majority, the choice was indicated by an (X) or (√) plus the word "Yes" or "No". However, it seems clear that even under *Bauman,* X plus "Yes" equals something other than (X), and ballots similarly marked must be invalidated.

In any event, it is obvious in this class of litigation that no voter casts his ballot in a manner contrary to the specific requirements of the Election Code in reliance on decisions of this Court which construed as valid ballots on which appeared various markings other than, or in addition to, the prescribed marks. Rather, they rely on the instructions given. In this case, the instructions on the ballots were sufficiently clear so that 27,935 of the voters properly marked their ballots.

I would affirm the decision of the court below and must, therefore, dissent from any determination which is contrary to that holding.