## Columbia Borough School District Election

*Killian & Gephart,* for petitioners.

BROWN, *J.,* December 29, 1975—

## HISTORY

Four positions on the Columbia Borough School Board were scheduled to be filled at the November 4, 1975, general election. One position was for a two-year term and three other vacancies were for six-year terms. One two-year term was to be filled and one candidate's name appeared on the ballot. Kenneth M. Sprout was cross-filed and appeared as the candidate for both the Republican and Democratic Parties. Four individuals appeared on the ballot as candidates for the six-year positions (three to be elected): Joseph E. Horn, cross-filed on both Republican and Democratic tickets; Ronald N. Mable, cross-filed on both the Republican and Democratic tickets; Barbara A. Carnahan, Democrat; and Jerry N. Davis, Republican.

In addition to the four candidates who appeared on the ballot, however, there were four very real candidates for school director whose names were not on the ballot: Gerald G. Fischer (two-year term);

Kenneth F. Hartman, Carl E. Mathias and John T. Auer (six-year term). Candidates Fischer, Hartman, Mathias and Auer ran as a "write-in team" on the platform established by the Concerned Citizens of Columbia, an independent, unincorporated association of Columbia citizens who seek major changes in the policy of the Columbia Borough School District. The candidates sponsored by the Concerned Citizens Association ran a "write-in" campaign seeking support for their election. As part of their campaign, the candidates prepared sheets containing pre-gummed, pre-printed stickers; each sheet contained one pre-printed sticker for each of the four candidates, Fischer, Hartman, Mathias and Auer. The stickers were prepared so individuals desiring to vote for the Concerned Citizens' candidates could insert the pre-gummed stickers in the voting machines in the place provided for registering a "write-in" vote.

At the close of the polls on election day, the tallies given for the candidates for the office of school director in the Borough of Columbia were quite conflicting. Any thoughts that the problem would be dispelled at the official canvass of the returns was quickly destroyed on November 17, 1975. At the official canvass, which was presided over by the Honorable Judge Appel, such glaring inconsistencies in the returns appeared that the judge, on his own motion, directed the votes for the office to be recounted in seven of the nine wards in the borough. Subsequently, petitions were filed challenging the returns in the two remaining wards and on November 21, 1975, Judge W. Hensel Brown signed orders directing that the votes cast in the two remaining wards be recanvassed at the same time as the recanvass of votes already ordered by the court.

The court ordered recanvass commencing at 2 p.m. on Friday, November 28, 1975, in the Lancaster County voting machine warehouse. Judges Johnstone and Brown were present at the initial recanvass session. Shortly after the official recanvass began, it became apparent that a great deal of time would be required to complete the task, due primarily to the large number of write-in votes and the condition of the voting machine rolls which contained the sticker votes. When two hours had passed and the first ward had not yet been completed, the following procedure was established by the court and counsel present for the completion of the recanvass:

(1) John Rengier, Esquire, Solicitor for the County Board of Elections, was delegated as the officer of the court in charge of further recanvass proceedings.

(2) The court directed the recanvass to proceed with Mr. Rengier presiding at a future date.

(3) The court directed that a stenographer be present at all future proceedings to make a record of the proceedings and any objections thereto for future review by the court.

The recanvass continued on December 1 and 2, 1975, utilizing the procedure set forth above. During the recanvass, John B. Rengier, Esquire, announced the totals cast for all candidates appearing on the ballot and counted every written or sticker vote cast on the face of the voting machine "write-in" roll which was not challenged by counsel for the ballot candidates. When counsel for the ballot candidates challenged a vote, the vote was not recorded by the election counters.

After Solicitor Rengier completed counting the unchallenged "write-in" votes on the face of the

vote roll, counsel for the write-in candidates was permitted to describe for the record the condition of the vote roll and the location and description of any whole or partial votes which were not counted. In addition to examining the actual vote roll, counsel for the write-in candidates examined the back of the voting machine used in each ward and placed his observations on the record. Both counsel for the ballot candidates and Solicitor Rengier observed while the description was placed on the record by counsel for the write-in candidates and stated that the description was factually accurate.

A conference was held in the chambers of Judge Brown on Thursday, December 4, 1975, attended by Solicitor Rengier and counsel for both the write-in and ballot candidates. At that time it was determined that the record taken during the examination of the voting machine in the Fourth Ward of Columbia should be transcribed. It was stipulated that this voting machine would be considered as a typical indication of all the voting machines in the other wards in Columbia and that all types of challenged write-in votes appeared in the Fourth Ward voting machine. It was further determined that upon receipt of the transcript, counsel could prepare briefs for presentation to the court in support of their positions with regard to whether a given category of votes should be counted. The culmination of this rather lengthy recanvass procedure is the present proceeding which requires the court to determine whether certain write-in votes cast should be counted.

## ISSUES

A. Should identifiable stickers which appear stuck to the back and other areas of the vote roll be

accumulated and counted as votes cast for the candidate indicated, where the sticker in question can be proven by physical observations to have been properly placed on the face of the vote roll at one time?

B. Should identifiable stickers which appear stuck to the back of the voting machine, behind the slide corresponding to the proper column on the vote roll be accumulated and counted for the candidate indicated, where it can be observed that the sticker in question was at one time placed on the face of the vote roll?

C. Should stickers which appear in the proper column on the face of the vote roll be counted when they have marks on them?

D. Should all votes cast for the candidate which appear on the face of the vote roll be accumulated and counted for that candidate if they can be identified as being votes cast for the candidate?

## DISCUSSION

The general principles on which this case must be decided were stated in Appeal of Transue, 35 Northampton 329 (1959) at 332:

"1. A ballot should be construed, if at all possible, as to enfranchise rather than disenfranchise.

"2. The effect of a ballot should always be determined in such a manner as to effectuate the intent of the voter.

"3. Nothing should be left undone to preserve the sanctity and secrecy of the ballot."

The first several issues involve stickers, or printed tags with adhesive on the back which were pasted to the paper roll in voting machines.

A sticker is, of course, permitted if properly applied to the ballot: DeWalt v. Bartley, 146 Pa. 529, 24 Atl. 185 (1892).

We will first consider the first and second issues. A misplaced write-in or sticker, whether on an individual ballot or on a paper roll in a voting machine, is of no legal efficacy whatsoever: Weber Appeal, 399 Pa. 37, 159 A.2d 901 (1960). There, someone stuck a card into the voting machine, which covered the paper roll at a write-in slot. The hearing judge concluded that 20 to 30 voters attempted to write in a candidate's name, and 16 others attempted to vote by affixing stickers, but none of these attempts appeared on the paper roll as it was obstructed by the inserted card. These votes were held invalid. In Weber, supra, the court quoted from the opinion of the Supreme Court in language that seems particularly applicable and pertinent to the issues concerning these wandering stickers, and which still appears to be the law in Pennsylvania:

"The technicalities of the Election Law (and they are many) are necessary for the preservation of the secrecy and purity of the ballot and must, therefore be meticulously observed. Thus it is, that any write-in or sticker which covers more of the ballot than the blank space provided therefore invalidates the vote for the office under which the write-in or sticker appears. See McCowin's Appeal and Lawlor's Appeal, supra. If so slight a departure from the requirements for the writing in or affixing by sticker of the name of a candidate (not otherwise appearing on the ballot) invalidates the vote for the office to which the write-in or sticker candidate aspires, surely stickers which are in no way affixed to the paper roll back of the slot for the reception of write-ins or stickers on a voting machine cannot lawfully be accredited as votes for the person whose name is printed on the stickers. A misplaced write-in or

sticker, whether on a ballot or on a voting machine is of no legal efficacy whatsoever. To hold otherwise would render facile the way to fraudulent voting and the thwarting of the electorate's will.

"What this Court said in Rodgers' Contested Election, 234 Pa. 512, 519, 83 A. 476, is presently peculiarly apposite: 'While it may be that the Court in this instance correctly guessed the intention of the voter, yet the fifty-seven mutilated ballots were not marked in accordance with the instructions contained in the Act of Assembly, and under the well established doctrine in this State they should not have been counted; to permit the counting of such ballots would be a precedent fraught with grave dangers for the future' ": 399 Pa. at 44.

In McCowin's Appeal, 165, Pa. 223, 30 Atl. 955 (1895) at 237, the court stated: "The voter is not authorized to insert anything in any part of said column, save and except in the blank spaces prepared for names not already on the ballot."

In Corydon Township Election, 13 D. & C. 518 (1930), stickers for candidate Garvin were found stuck on twenty ballots, not in the space on the ballot therefore but "scattered over the different names printed on the ballot under the heading of supervisor." These ballots were held invalid.

In Clinton Township Election, 20 D. & C. 530 (1933), it was stated that where a sticker is "placed in any space other than the box provided for the insertion of additional names under the particular office sought, that vote cannot be counted for the person whose name is written in or whose sticker is pasted on": 20 D. & C. at 531.

All of the cases above invalidated ballots or votes because the stickers by which votes were cast were found elsewhere than in the correct location on the

ballot. No Pennsylvania case, however, has been discovered with an identical fact situation to the instant matter.

Applying the general rules underlying the above decisions, stickers found on the back of the paper roll or elsewhere inside the voting machine should not be counted. No case has been found dealing with the problem of the "moving sticker" but the cases have required a sticker to appear at the proper place on the ballot. In view of the possibility that one voter could properly affix a sticker and then attempt to deposit others inside the machine, these moving stickers should not be counted as valid votes.

The third issue concerns stickers which, in addition to a candidate's name, have the number "15" written thereon. The Election Code of June 3, 1937, P. L. 1333, as amended, 25 P. S. §3063(a) states, in part: "No ballot which is so marked as to be capable of identification shall be counted." The issue here is, simply stated, whether the number "15" as written on these ballots is such a mark as to render the ballot capable of identification.

The Supreme Court has stated that this section must be liberally construed, and if there are several interpretations of a mark on the ballot, a court should hesitate to invalidate a vote: Norwood Election Contest Case, 382 Pa. 547, 116 A.2d 552 (1955). The courts have shown their reluctance to invalidate votes because of this section on a number of occasions. In Whitpain Township Election Case, 58 Montgomery 188 (1942), the court stated that only such marks as cannot reasonably be supposed to have been made for any other purpose, except for distinguishing a ballot, will invalidate a vote (citing McCaffreys' Appeal, 337 Pa.

551, 559, 11 A.2d 893 (1940); See also In re Mount Carmel, 38 Northumberland 143 (1966).

The Supreme Court's latest statement seems to be In Re: Recount of Ballots, 457 Pa. 279, 325 A. 2d 303 (1974), where the court stated: "[u]nless the alleged identifying feature is of such significant proportion that it justifies an inference that it was willfully done for the purpose of rendering the ballot identifiable or where the irregularity has created an ambiguity, casting doubt upon the intention of the voter, the irregularity is to be treated as surplusage and the will of the voter must prevail."

Mr. Justice Musmanno's statement in Norwood, supra, 382 Pa. at 552, is most important to this issue: "When out of a number of varying possible explanations for an unnecessary mark for a ballot, only one explanation can indict the mark as a symbol of identification, the ballot should not be invalidated on that elusive possiblity."

Here, the number "15" which appeared on several stickers was the number of the column in which (and only in which) a valid vote for the sticker candidate could be placed. This creates a strong inference that voters wrote the number on their stickers so they would be certain to place the sticker in the proper column. Here is the alternate explanation of which Mr. Justice Musmanno spoke.

In Cullen Appeal, 394 Pa. 256, 146 A.2d 831 (1958), a ballot containing a "6" where an "X" should have been placed was invalidated. However, that figure was placed in a box next to a printed name, and no other possible explanation for the entry of a "6" was discussed. Cullen can be distin-

guished from a case involving a write-in sticker, where the number evidently could serve as a reminder to the voter of the proper slot for the sticker.

The foregoing opinion by Mr. Justice Musmanno seems to compel a finding that, as an alternate and reasonable explanation for the numbers on stickers has been proposed, the votes by numbered stickers cannot be invalidated under 25 P. S. §3063(a).

The final issue concerns votes in which the candidate's name is incompletely or erroneously entered. Some of these are written in and others are evidently torn stickers printed with a candidate's name.

The general rule governing such situations is stated in Whitpain, supra, as follows: "Where the intent of the voter to vote for a candidate is manifest, it should be given effect."

A write-in vote giving only a surname is valid, Reifsnyder v. Musser, 12 W.N.C. 155 (1881), even where misspelled or accompanied by the wrong initials." Petition of Hawkes, 46 Schuyl. L.R. 83 (1950); In Re Hutchinson's Nomination, 35 Montgomery 293 (1919). Misspellings and wrong initials can be disregarded: Parente Appeal, 390 Pa. 249, 135 A.2d 62 (1957).

A given name or Christian name only, or with the first letter or two of a surname, is not valid: Transue, supra.

A ballot which contains a portion of a surname is invalid unless the portion of the name is idem sonans, or identical in sound, with the whole surname. It is fatal to leave out a syllable from a material part of a surname. People ex rel. Williams v. Cicott, 16 Mich. 282 (1868). For example, a vote for "r scher" would not be a valid vot for Fischer.

Regarding torn stickers, 25 P. S. §3063(a) provides: "Any erasure or mutilation in the vote in any office block shall render void the vote for any candi-

dates in said block." Cutting or tearing constitutes mutilation: Dinkins v. City of Aberdeen, 207 Miss. 552, 42 So. 2d 744 (1949). Hence, a torn sticker invalidates a vote by statute.

And now, December 29, 1975, by reason of the foregoing language of this opinion the court determines that all votes cast for any candidate and specifically Gerald G. Fischer under the first and second issues as above stated, being identifiable stickers stuck to the back and other areas of the vote roll where it appears the stickers were properly placed on the face of the vote roll at one time, are not valid votes and shall not be counted; similarly, identifiable stickers stuck to the back of the voting machine behind the slide corresponding to the proper column on the vote roll are not valid votes and shall not be counted, these two types of stickers being clearly wandering stickers and, therefore, invalid; as to the third issue — stickers with the numeral "15" on the face thereof shall be counted (Norwood, supra); and finally, stickers with the surname of Fischer or other surnames of write-in candidates shall be counted, but not the following stickers: G. era, Gerald, Geral, Gerald G., scher r.