# Norwood Election Contest Case.

Argued June 27, 1955. Before, STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO, and ARNOLD, JJ.

*Samuel L. Rodgers,* with him *Robert L. Ceisler* and *Ceisler & Rodgers,* for appellant.

*George B. Stegenga,* for appellee.

ORDER PER CURIAM, June 27, 1955:

AND NOW, to wit, June 27, 1955, the Order of the court below is reversed and the record is remanded with direction to correct the return of the Recount Board by counting as a vote for Henry Norwood for the nomination of councilman the vote contained in the disputed ballot in controversy in these proceedings. Opinion to be filed later. Each party to bear his own costs.

OPINION BY MR. JUSTICE MUSMANNO, August 31, 1955:

Henry Norwood, the appellant in this case, was a candidate for nomination as borough councilman in the 3rd Ward of the Borough of Canonsburg, Washington County, in the Democratic primary election of May 17, 1955. On May 25, 1955, upon proper petition presented to it, the Court of Common Pleas of Washington County appointed a Recount Board to recount the ballots cast in the second precinct of the Third Ward. At the termination of its task the Board concluded that Henry Hirst was the successful nominee over Henry Norwood by one vote. In the reviewing process the Board declined to accept as a valid vote for Norwood a ballot which carried on it a certain check mark in addition to the X in the square opposite his name. The Court of Common Pleas of Washington County, to which Norwood appealed, affirmed the report of the Recount Board and declared Hirst the officially desig-

nated nominee of the Democratic Party for the office of councilman. Norwood then appealed to this Court.

In view of the obvious need for an immediate decision so that no delay might be encountered in preparing the ballots for the Fall elections, we held a special argument on the appeal at our session in Philadelphia on June 27, 1955 and on the same day ordered the disputed vote to be counted for Norwood so that under Section 923 of the Election Code, 25 P.S. 2883, lots could be cast for the determination of the tie vote. This Opinion is now filed to announce the reasons which caused us to reverse the decision of the Court below.

It is but commonplace to say that the right of suffrage is the most treasured prerogative of citizenship. Whether that right be exercised in the choice of a President of the United States or a Borough Councilman, it may not be impaired or infringed upon in any way except through fault of the voter himself. The majority of the three Judges who sat on this case in the Court of Common Pleas of Washington County were of the view that the unknown voter who prepared the telltale ballot now before us disfranchised himself when he employed both a check mark and an X in registering his will to vote for Norwood. In this respect they quote from the Act of 1937, June 3, P. L. 1333, Art. XII, Sec. 1223 (25 P.S. 3063(a)): "No ballot which is so marked as to be capable of identification shall be counted . . . Any ballot marked by any other mark than an (X) in the space provided for that purpose shall be void and not counted: Provided, however, that no vote recorded thereon shall be declared void because a cross (X) mark thereon is irregular in form . . ."

It is unquestioned that if the cloak of anonymity is torn from the voting operation, the whole value of a secret ballot is destroyed. A voter who cannot be

assured of absolute namelessness at the polls has lost the greater part of his independence in the selection of those who are to control his destiny in the governmental affairs of his community, state or nation. Thus, there can be no doubt about the correctness of the principle which motivated the majority in the Court below in reaching its decision. The only problem before us is whether the principle was properly applied to the facts in the case. The disputed ballot shows in the square following Norwood's name a check mark partially absorbed and almost entirely overshadowed by a firmly and heavily lined X. The upper tail of the check mark overreaches the frame enclosing the names of councilmanic candidates by no more than 1/16 of an inch. Were it not for the closeness of the tally of votes between the two main contenders, Norwood and Hirst, it is doubtful whether any election Board would attach the slightest importance to this superfluous and fragmentary mark on the ballot. However, there is no race so keen, no rivalry so acute as that which is observable in a hotly contested election contest. Thus it is that every dot, blemish or smudge on a ballot which may give advantage to one candidate over the other assumes in the former's eyes a size and significance which does not always conform to reality. To the disinterested judge, however, a fragment must remain a fragment and a dot a dot. The controverted mark may not be exaggerated in physical outline to match the bigness of the issue which it will decide.

We cannot believe, upon a study of the ballot before us, that the meek-spirited check mark on it in any way identifies the voter. In the *Bauman Election Contest Case,* 351 Pa. 451, 455, we said: "As to Exhibit No. 2, the voter instead of making his cross with only *two* diagonal lines crossing each other in the center, made in addition thereto a third and parallel line from

the left of the square to the right, passing about one-sixteenth of an inch below the center of the properly crossed diagonal lines. The voter thus indicated his choice by a proper X and then added the meaningless line. We do not think the mark described made the ballot void as being in contravention of the provision in section 1223 (a) supra, which reads as follows: [quoting from Sec. 1223 as already cited in this Opinion.]" It is not known whether the voter in the case before us, intent on not forgetting Norwood, immediately checked his name on the ballot before proceeding to place his X in the squares of his other preferred candidates, or whether, in a moment of distraction, when he arrived at the councilmanic candidates, he checked the name of Norwood, in affirmation of his desire to vote for him—and *then* methodically affixed his X. Either of these speculations would coincide with a determination on his part to vote for Norwood, and neither of them of itself would identify him by name or personality to such persons as might later study the ballot. If one were determined to find something on a ballot which could be interpreted as a badge to single out the person who cast the vote, it would be an easy matter to discover some vagrant mark which would stand out as a presumed symbol of identification. Even the X itself can be drawn in such a way as to render it distinctive. One of the arms of the X can be extended higher than the other, one of the legs can be pushed below the confining square. The two oblique lines can be made to meet in a high-throated position or overlap in a low cross-legged position. But no matter how grotesquely an X may be drawn, the irregularity may not form the basis for a vote invalidation. Section 1223 of the Election Code specifically contemplates a situation of that character: "Provided, however, that no vote recorded thereon shall be declared

void because a cross (X) mark is irregular in form . . ." In the *Bauman* case, Chief Justice MAXEY, speaking for the Court, said: "The provision in sub-section (a) of sec. 1223 (Art. 12) of the Act of June 3, 1937, P. L. 1333 (25 P.S. 3063), that 'No ballot which is so marked as to be capable of identification shall be counted' must be construed with great liberality, for if every ballot which carried upon it some distinctive mark should be invalidated, there is scarcely any limit to the number of ballots which would be rejected for this reason . . . Many ballots contain smudges or are torn in certain ways. These might possibly be identifying marks but ballots so smudged or torn are not to be rejected simply because of that possibility." In *McCaffreys' Appeals*, 337 Pa. 552, 559, we said: ". . . not every mark which may separate and distinguish a ballot will necessarily result in a declaration of invalidity, but only such marks as cannot be reasonably supposed to have been made by the voter except for the very purpose of distinguishing his ballot . . ."

When out of a number of varying possible explanations for an unnecessary mark on a ballot, only one explanation can indict the mark as a symbol of identification, the ballot should not be invalidated on that elusive possibility. Every rationalization within the realm of common sense should aim at saving the ballot rather than voiding it. Speaking to this very point, Chief Justice MAXEY stated in the *Bauman* case: "The power to throw out a ballot for minor irregularities, like the power to throw out the entire poll of an election district for irregularities, must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons."

As already stated, the Order of the Court below is reversed in accordance with directions contained in our Order of June 27, 1955.