## Absentee Ballots Cast at Election of April 28, 1964

Before Sweet, P. J., Curran and McCune, J.J.

*Robert L. Ceisler*, for Genevieve Blatt.

*Thomas J. Terputac*, for Michael A. Musmanno.

SWEET, P. J., May 25, 1964.—Twenty absentee ballots in South Strabane Four have been challenged by a Democratic candidate for the United States Senate, and by a Democratic candidate for precinct leader. Eight scattered absentee ballots have been challenged by the Senatorial aspirant. Since at the time of hearing and writing, Justice Musmanno and Secretary of In-

ternal Affairs Blatt are virtually tied, these challenges are of more than routine importance.

The general polestar of construction in election contests is the enfranchisement of the elector if circumstances admit: Reading Election Recount Case, 410 Pa. 62 (1961); Norwood Election Contest Case, 382 Pa. 547 (1955). But here in the South Strabane contest, we are concerned with absentee assisted voters, and it would seem that this presents a special situation. All assistance in voting involves the possibility that the will of the assistant will dominate the choice; all absentee voting involves the possibility that the voter will be subject to influences, not usual at the polls, when he votes. The absentee assisted voter presents that double risk and so the Acts of Assembly have erected safeguards which we in the judiciary are bound to man and maintain.

Twenty old ladies in the county home have submitted absentee assisted ballots. Eleven of these showed "low mentality" or "retarded" as the occasion for assistance. The county home physician testified quite frankly that he had signed certificates, (1) before they were filled in; (2) without knowledge of the physical or mental condition of the applicant; (3) as an accommodation, and (4) against his better judgment. Aside from this there was no testimony as to the inability of these persons to come to the polls on Primary Day, or as to the need of any one of them for assistance. We pass without deciding if "low mentality" or "retarded" is an "illness or physical disability" within the meaning of 25 PS §3146.1 (k), preferring to decide this on broader grounds.

The Act of June 3, 1937, P. L. 1333, as amended, 25 PS §2813, provides as follows, as far as is material for our use:

"For the purpose of registration and voting, no person shall be deemed to have gained a residence by rea-

son of his presence or lost it by reason of his absence while . . . kept in any poorhouse or other asylum at public expense . . ."

None of these elderly ladies were originally from South Strabane Four, but, as their applications showed, had resided in Canonsburg, Charleroi, and elsewhere before going to the County Home for Aged Women. It is our considered judgment that none of them were properly voters in South Strabane Four, but that their registration, applications for absentee ballots, and voting should have been done, if anywhere, in their home precincts. None had gained a residence in South Strabane or lost a residence in Canonsburg, Charleroi or elsewhere, by reason of being kept in the county home.

Policy reinforces logic here. If the voters at the county home must vote in their home precinct, the chances of the views of the superintendent being written a hundred large in the election totals are greatly reduced. It is a common cynicism of the day that the senile old people in the homes are voted rather than voters.

We also specifically find that the requirement of inability "to appear personally at the polling place because of illness or physical disability" [25 PS §3146.8-(e)(3)] was not met by the testimony of the county home physician. See In Re Appeal from County Board of Elections, 41 Wash. Co. 198 (1961), 53 Mun. 57. It follows that the 20 ballots in this class are illegally cast, and the challenges of Mr. Ceisler and Miss Blatt are sustained.

On the other hand we dismiss the challenge to 5 ballots cast by members of a school board, who were present Primary Day in Houston, Texas, for a school directors' convention. It seems to us that they are "unavoidably absent from the commonwealth . . . during the entire period the polls are open for voting." It has been invited to our attention that the Attorney General has

construed unavoidably to mean "business occupation or duty" and that attendance at this convention is not mandated and hence not a duty of the directors. This seems too narrowly precise to be a realistic guide. We would prefer to construe the word "unavoidably" in this context to mean absence for good and proper reasons, something more weighty than the mere convenience of voting by absentee ballot. For the same reasons we dismiss the challenge to the McGraw ballot, he being on business in Scotland on Primary Day. McGraw was challenged on the hypothesis that being 72 and retired, he had no business. We do not view the word "business" in so confined a way as this and feel that the challenger did not sustain the burden of proof on the McGraw ballot. The Vincent ballot challenge is sustained because of the manifest inconsistencies created in making out the envelope. One may not sign an application that he is unable to sign his name and expect it to get full credence.

It is further noted that Vincent does not have recorded on his registration card his declaration that he has a physical disability which requires assistance in voting.

We did not have the benefit of oral argument on the ballot of Robert A. Patton. However, it seems to us that Patton's ballot should not be counted. The assistance statute, 25 PS §3146.6A, prescribes not only that the absentee who wants assistance sign a declaration but also that this declaration be acknowledged before an officer qualified to take acknowledgment of deeds. True, the application for absentee ballot has no place for this acknowledgment but in fine print it says that the elector requiring assistance must procure a special form from the county board. Unfortunately, Patton did not do this and we are obliged to sustain the challenge on this technical ground. Many, if not all, of the county home ballots discussed hereinabove are also

without this acknowledgment. See Johnson's Election Guide, sec. 2221.

Twenty-two challenges are thus sustained, six dismissed, and the record is returned to the election board for further action in pursuance of the Election Laws. The ballots of McGraw and five school directors will be counted.

Grace Raymond
Mike Gasti
Michael Angotti
Shirley G. Hoyer
Frank Spishock

*Concurring Opinion*

McCUNE, J., May 27, 1964.—The practice carried on at the County Home for Women as revealed by the testimony taken in the instant proceeding cannot be too strongly condemned. Apparently it has been the practice to vote these unfortunate people instead of allowing them to vote. This was plain when the physician for the home, the physician who purportedly certified that these voters were disabled and could not go to the poles, testified that he never examined them at all and did not intend to certify whether they could go to the poles or not and merely signed the certificates in blank as an accommodation.

It is obvious that someone at the home, presumably someone in charge, then filled in the various certificates with words chosen at random as reasons for inability to attend the poles. It is also obvious, we think, that some person in charge also did the voting because frequently the illness certified to was "low mentality" or "retarded." It is unlikely that the voter would call herself retarded and then proceed to vote. It is likely that the person who wrote "retarded" into the certificate also did the voting.

This is the most cynical approach to the privilege of

the ballot which this court has heard of. The practice should be discontinued forthwith.

In the event there has been a violation of the election laws, it is hoped that the district attorney will take ` appropriate action.

Concurring: Curran and McCune, J.J.