# Canvass of Absentee Ballots of November 2, 1965, General Election

430

S. W. *Farber*, for appellant.

*Horace A. Davenport*, for Montgomery County Board of Elections.

FORREST, P. J., and GROSHENS and HONEYMAN, JJ., December 30, 1965.—This court, sitting en banc, is presented herein with a determination of the validity and legality of some 46 absentee ballots which were challenged after the general election of November 2, 1965. Of these votes challenged, 17 challenges came from Springfield Township, 23 from Plymouth Township, two from the Borough of Norristown, first ward, and four from Upper Moreland Township.

In each of the several challenges filed against the elections in the above-mentioned district and munici-

palities, there are certain common problems presented, and for the purposes of this opinion, all challenges will be treated as companion cases. In all the appeals herein involved, hearings were held before the three Commissioners of Montgomery County, sitting as the county board of elections, and from their determinations these specific appeals followed. It must be noted that all these appeals arise under The Absentee Voting Act of August 13, 1963, P. L. 707, sec. 20, et seq., 25 PS §§3146.1 to 3146.9 and the interpretation of that statute.

There have been very few cases arising under The Absentee Voting Act of 1963; however, from a reading of these cases in conjunction with cases arising under the prior act, we have isolated the following principles which we feel are involved in this case. In the case of Perles v. Northumberland County Return Board, 415 Pa. 154 (1964), the court said, at pages 158-59:

"The disfranchisement of even one person validly exercising his right to vote is an extremely serious matter. If, assuming, arguendo, *some* but not all of the ballots were invalid, and we should declare *all* the absentee ballots void because of the few that might be invalid, we would be disfranchising a large number of voters whose votes have not been shown to be invalid. In Norwood Election Contest Case, 382 Pa. 547, 552, 116 A. 2d 552, this Court stated: 'Every rationalization within the realm of common sense should aim at saving the ballot rather than voiding it . . . .' "

In particular reference to absentee voting under the 1963 act, the following comments appear in the case of Canvass of Absentee Ballots of April 28, 1964, Primary Election, 34 D. & C. 2d 419 (1964), at pages 420-21:

"The court, in considering these appeals, must keep in mind that, in the casting of an absentee ballot, the ordinary safeguards of a confrontation of the voter by the election officials and watchers for the respective

parties and candidates at the polling place are absent. See Decision of County Board of Elections, 29 D. & C. 2d 499 (C. P. Lebanon, 1962), where the Court stated, at pages 506-07:

" ' There is little room for argument that the provisions of the law regarding absentee voting must be strictly construed and the rights created thereunder not extended beyond the plain and obvious intention of the act. Absentee voting is somewhat of a new concept in our democracy and we are learning that it is fraught with evils and frequently results in voided votes.'

"Accordingly, the statutory requirements for the proper casting of an absentee ballot are not mere technicalities but are substantive in nature and are mandatory; . . . ."

Finally, in the same case, Canvass of Absentee Ballots of April 28, 1964, Primary Election, supra, at page 422, on the argument that because the election board, through its personnel, accepted faulty applications, it is estopped to subsequently assert their invalidity, the court said as follows:

"It is urged that the county board of elections, through its clerks, having accepted improperly executed applications for absentee ballots is now estopped from invalidating the applications and ballots.

"It is clear that the doctrine of estoppel has no application in the face of a statutory mandate. Where the legislature has clearly set forth the requirements for one to avail himself of a privilege, a strict compliance with the statutory requirements is the only route one may travel in exercising that privilege. The voter, by failing to observe the statutory requirements, has disfranchised himself, and the fact that his failure was compounded by the inadvertence or negligence on the part of the county board of elections, through its clerks, cannot be interpreted as a waiver of such requirements".

The Montgomery County Board of Elections, prior to the general election of November 2, 1965, met with representatives of both the Democratic and Republican Committees of this county for the purposes of setting up a facile procedure to expedite the handling of absentee ballots within the county. At that meeting, on September 7, 1965, it was agreed that certain procedures required for technical compliance with the dictates of the Absentee Voting Act would be eliminated or modified, so that, at time of canvass, there would be less confusion and involvement. This proposal was approved by Horace A. Davenport, Esq., the solicitor for the county board of elections, Peter P. Stevens, chief clerk for the election board, Sheldon W. Farber, Esq., attorney for the County Democratic Committee, and John G. Kauffman, Esq., attorney for the Republican Committee of the county.

This court feels that the Absentee Voting Act involved in this litigation should be strictly construed to protect the sanctity and secrecy of the individual voter's right to vote. It is felt that the individual voter who requests special treatment at the time of primary or general election must be willing to submit to the strict procedural requirements implicit in the act. In this regard, we feel that every voter who has properly filled out the application for the ballot and has properly voted his ballot should have his vote counted. There is a distinction between votes which are improperly cast and the subsequent mismanagement of votes by the election board, when those votes were completed correctly by the absentee voter. In the first situation, the strict requirements must be followed to protect the individual's vote; in the latter case, although strict compliance is desired, it is not mandatory, because slight irregularities can be anticipated in the overall handling of absentee ballots. In the latter case, the principles of liberal interpretation should apply, consistent with the above-quoted approach of the Perles

case, supra, viz.: " 'Every rationalization within the realm of common sense should aim at saving the ballot rather than voiding it . . .' "

By taking this position, we do not mean to condone the agreement of September 7, 1965, above mentioned, which attempted to short-cut the canvassing procedures under the act. We feel that any such agreements should be disregarded and all future canvassing done according to the act. However, we do not feel that by this agreement any serious breaches occurred in this instance with the legislative intent as demonstrated in the act. Therefore, this court will not sustain the general "blanket" challenge presented by petitioner to all the absentee ballots on the basis of the election board's departure from the statutory directions. However, in regard to the particular challenges, this court feels a strict interpretation is required and will sustain all challenges on the individual basis, unless they strictly comply with the act.

Throughout the argument of these petitions, and apparent from the briefs of the litigants, there are several patterns of objections which are common to all the municipalities involved herein. Rather than deal with each individual challenge in each municipality involved in these appeals, we shall try to catalogue the common objections to treat them uniformly.

A great number of challenges were made under the authority of section 20 of the Act of August 13, 1963, 25 PS §3146.2(2), under the physical disability provisions for applications to receive an absentee ballot. This section reads as follows:

"(2) The application of any qualified registered elector who is unable to attend his polling place on the day of any primary or election because of illness or physical disability . . . shall be signed by the applicant and shall include surname and christian name or names of the applicant, his occupation, date of birth,

residence at the time of his becoming bedridden or hospitalized, length of time a resident in voting district, voting district, if known, place of residence, post office address to which ballot is to be mailed . . . . In addition, the application of electors shall include a declaration stating the nature of their disability or illness and the name of their attending physician, if any, together with a supporting declaration signed by such attending physician, or, . . . by a registered elector unrelated by blood or marriage of the election district of the residence of the applicant . . . ."

Without delving into the medical reasons behind all the applications, this court feels constrained to sustain all the challenges where the above required information was not filled in on the application. In particular, all those challenges are sustained to applications where applicant designated a particular physician in attendance and no supporting affidavit was signed by the "attending physician". In a few cases, the challenge was not that the applications were incorrect, but rather that applicant was physically able to attend the polls despite recommendation by a doctor that the voter remain at home. In these few instances, the court will not attempt to determine the validity of the medical necessity for such applications. That the voter could physically have made it to the polls, although contrary to medical advice, does not invalidate the absentee ballot. These ballots in the latter case should be valid and the challenges dismissed.

The case of Absentee Ballots Cast at Election of April 28, 1964, 34 D. & C. 2d 504 (1964), demonstrates that the mere signature of an "attending physician" per se does not validate the application. In that case, the physician at the County Home for Women signed the applications in blank. While the case was decided on different grounds, the court permitted inquiry into the signing of the declaration of the "attending phy-

sician". With this case as a guideline, this court does not intend to preclude investigation as to the signature of the "attending physician". However, if that physician indicates that he was so treating the person and that he advised that person not to attend the polls, this is sufficient reason to determine the ballot valid and prevent the evils of the Absentee Ballots Cast at Election of April 28, 1964, case, supra.

With the above statements, plus the policy decision made at the outset of this opinion, viz., that those who desire special treatment of absentee ballot privilege must dutifully complete the applications and ballot correctly in strict compliance with the statute, we reach the following results in regard to the challenges on this topic:

*Springfield Township*

Donald A. Manly Power—challenge dismissed

Elizabeth M. Napier—challenge dismissed

*Plymouth Township*

Angeline Angello—challenge sustained

Sally Lenzi—challenge sustained

Maria G. Meoli—challenge sustained

John C. Salamone—challenge sustained

Agnes Grant—challenge sustained

Clarence Mullin—challenge dismissed

Jennie Salamone—challenge sustained

Assunta Carbo—challenge sustained

Helen D. Capizzi—challenge sustained

Maude H. Howell—challenge sustained

*Norristown Borough*

Leon R. Werkiser—challenge sustained

Elizabeth B. Werkiser—challenge sustained

*Upper Moreland Township*

All of the challenges in this township were on the basis that the attending physician failed to sign the support affidavit—challenges sustained.

Another objection raised to certain absentee ballots cast in this election arises by virtue of alleged illegal assistance to the absentee voter. In one particular case, it was discovered that an elderly voter was assisted by his wife in casting his ballot, he being too ill to do so by himself. This matter is covered by section 22 of the Act of August 13, 1963, P. L. 707, 25 PS §3146.6(a), as follows:

"Provided further, That any elector who has filed his application in accordance with section 1302, subsection (g)(2) [25 P. S. 3146.2(2)] and is unable to sign his declaration because of illness or physical disability, shall be excused from signing upon making a declaration which shall be witnessed by one adult person in substantially the following form: I hereby declare that I am unable to sign my declaration for voting my absentee ballot without assistance because I am unable to write by reason of my illness or physical disability. I have made or received assistance in making my mark in lieu of my signature".

Further, section 23 of the act, 25 PS §3146.6a, deals with assistance as follows:

"Any elector qualified to vote an official absentee ballot in accordance with provisions of section 1301, subsection (k), [25 PS §3146.1], may receive assistance in voting (1) if there is recorded on his registration card his declaration that he has a physical disability which renders him unable to see or mark the official absentee ballot, the exact nature of such disability being recorded on such registration card; (2) if such elector requiring assistance submits with his application for an official absentee ballot, a statement setting forth the precise nature of the disability which renders him unable to see or mark the official ballot and that to the best of his knowledge and belief he will still suffer from the said physical disability at the time of voting his official absentee ballot . . ."

The assistance provisions of the Absentee Voting

Act are mandatory, and any ballot which demonstrates that assistance was given without the voter having fulfilled all the assistance requirements will be invalidated. Further, from investigation into the activities of the voter during the time he votes his ballot, if any unlawful assistance is disclosed, the vote shall be invalidated. The strict interpretation of the assistance provisions are consistent with our principle of strict compliance to protect the sanctity and secrecy of each individual's ballot. Any disclosure of any unauthorized assistance must invalidate that particular ballot.

Thus, we have reached the following decisions on these particular challenges:

*Springfield Township*

Wharton Sinkler—challenge sustained

*Plymouth Township*

Jennie Salamone—challenge sustained (also challenged and sustained under the physical disability question)

Joseph S. Puleo—challenge sustained

John C. Salamone—challenge sustained (also challenged and sustained under the physical disability question)

Ann M. Skillton—challenge sustained

The most complex issue presented in these appeals is the meaning of "unavoidably absent" and "unable to attend". More particularly, the question is presented as to vacations and business trips and the status of the spouses accompanying the elector who primarily withdrew from the voting residence on election day. The act provides, in section 20, 25 PS §3146.1:

"The following persons shall be entitled to vote by an official absentee ballot in any primary or election held in this Commonwealth in the manner hereinafter provided:

". . . (j) Any qualified registered and enrolled elector who expects to be or is unavoidably absent from

the Commonwealth or County of his residence during the entire period the polls are open for voting on the day of any primary or election; . . ."

The Pennsylvania Constitution, article VIII, sec. 19, provides that any healthy voter can utilize the absentee voting procedures only when he will be "unavoidably absent from the State or county of their residence because their duties, occupation or business require them to be elsewhere . . . ." In an opinion dated July 10, 1963, just prior to the adoption of the most recently amended Absentee Voting Act (August 13, 1963), the Pennsylvania Attorney General construed the words "unavoidably absent" in connection with an elector's vacation period, in which he determined that absence during elections on a vacation is a voluntary absence and not an unavoidable absence: Johnston Election Guide, §2227.

A certain amount of common sense is required in determining whether or not an absence of an elector is for business or vacation. Certainly, where one is on a legitimate business trip, engaging in some recreational pursuit would not change the nature of the sojourn. Similarly, one who undertakes a vacation excursion and visits a correspondent business establishment while vacationing cannot be said to be unavoidably absent on business.

Another problem in this regard is presented by the person whose employment removes him from the voting district throughout the day and into the night; however, he leaves his residence in the morning and returns after the polls are closed. We do not feel that this elector represents a voter who is "unavoidably absent" within the constitutional meaning of the words. It is regrettable that such a person might not be able to vote, but it is felt that on election days, this person should be able to alter his schedule to enable him to vote.

Finally, in this connection, there are the wives who accompany their husbands on business trips and vacations. It is argued that it is a wife's duty to be at her husband's side at time of his vacation. We cannot adopt this point of view. The wife who accompanies her husband on a vacation is normally experiencing the pleasant change of surroundings and relaxation inherent in a vacation trip. If the wife's usual duties are as a housewife, then her absence on a vacation with her husband is not unavoidable absence due to her duties. Further, merely because a wife travels with her husband to a business meeting of the latter's, the business interest of the husband cannot be attributed to the wife being absent as a demonstration of her personal business involvement, other than as wife and hostess. While we are not unaware of the case of Decision of County Board of Election, (Lebanon County), 29 D. & C. 2d 499 (1962), we do not adopt the argument presented therein on the interpretation of the word "duty".

In light of the above statements, we reach the following conclusions in regard to the challenges on the question of unavoidable absence:

*Springfield Township*

Joseph B. Smith—challenge sustained
John H. Smith—challenge dismissed
Margaret Burrall—challenge sustained
Charles Burrall—challenge sustained
Alice Newman—challenge dismissed
Richard Newman—challenge dismissed
Barsha Powers Grace—challenge sustained
Andrew Oliver Young—challenge sustained
Dorothy M. S. Jacobsen—challenge sustained
Jacob S. Slick—challenge dismissed

*Plymouth Township*

George A. Fernley—challenge sustained
Mildred B. Fernley—challenge sustained

There were several challenges made to incomplete applications and errors in the execution of the ballot or identity of the voter. We have already stated that we interpret the act strictly, and feel that all those who seek the special privilege of casting an absentee ballot must follow all the procedures which are required. Therefore, where ballots were signed in a different fashion from the registration cards, where certain portions of the ballot were incorrectly filled in or left blank, and where applications were not totally completed by the applicant, but obviously filled in by another, in all these cases, challenges to these ballots should have been sustained.

Consistent with this thinking, the following conclusions are reached in these challenges:

*Plymouth Township*

James R. Scrivner, Jr.—challenge sustained

James W. Honeysett—challenge sustained

John S. Blackburn—challenge sustained (also sustained on other ground)

Edwin Ladove—challenge sustained

John C. Salamone—challenge sustained (also sustained on other ground)

Joseph S. Puleo—challenge sustained (also sustained on other ground)

Anne Lenzi—challenge sustained (also sustained on other ground)

Maria G. Meoli—challenge sustained (also sustained on other ground)

There have been two student votes challenged in this election, both on the basis that although these two voters were legitimately matriculating, they were both within sufficient proximity to their respective voting districts to return home for the purpose of voting. One student was at the University of Pennsylvania, Wharton School, and the other student was at Princeton University, N. J. Both institutions are sufficiently close to

Springfield Township to permit these students to attend the polls without extreme hardship, if they desired to vote. The students live just off campus from where they were going to school. In the opinion of the Pennsylvania Attorney General rendered on this topic under the prior Absentee Voting Act (Student Voting, 21 D. & C. 2d 184 (1960)), the following interpretation of student absentee votes is provided, at page 185:

"We are therefore of the opinion and you are accordingly advised that students in full time attendance at educational institutions *may* qualify as 'absentee electors' within the meaning of Act No. 789, approved January 8, 1960, since they are there by reason of their 'duties, business or occupation' ". (Italics supplied.)

Although this opinion was rendered under the prior Absentee Voting Act, no change seems to have occurred in reenactment which would preclude this interpretation.

We feel that, although these students fit the technical requirements of the student category, their close proximity in this situation should require their voting at the polling place of their residence. Thus, this court determines that:

*Springfield Township*

Philip Henry Strubing, III—challenge sustained

Nancy Whiting Ferguson—challenge sustained

In Plymouth Township in particular, but as an overall statement of policy, this court feels that where a person makes application for an absentee ballot and seeks this special treatment, that voter must be prepared to state his reasons entitling him to that special status. The theory behind this thinking is that in the casting of absentee ballots, no chance is given to challenge that voter in a personal confrontation, as is the case with challenges at the polling place. Since challenges can be made at the time of canvass, the absentee

voter must be prepared at that time, or shortly thereafter, to show his entitlement to such treatment. Thus, the burden is not on the person asserting the challenge to prove that the ballot should not be counted, but on the challenged voter to show the challenge is incorrect. Failing such proof on the part of the challenged voter, the challenge must be sustained.

Thus, in the challenges against the ballots of Jean Bright Eastwood and John W. Eastwood, it was suggested that they no longer were residents of Plymouth Township. The election board quite properly sustained these challenges, since there was no proof as to their residence. We also sustain these challenges.

In the challenge of John S. Blackburn, the election board erroneously sustained all the objections to questions directed toward him concerning his unavoidable absence. As has been stated before, the burden is upon the voter to show that he was unavoidably absent, and without such a demonstration, the challenge must be sustained. Thus, in these challenges:

*Plymouth Township*

Jean Bright Eastwood—challenge sustained

John W. Eastwood—challenge sustained

John S. Blackburn—challenge sustained (also sustained on other grounds)

There are three military ballots involved in these cases. In Springfield Township, the ballots of George W. Cox, Jr., and Pauline Cox were challenged on the basis that they do not live in the district, nor have they ever resided there. George W. Cox, Jr., is in the United States Army and is presently in Viet Nam. His wife is living with his children at Fort Belvoir, Va. Both voters have registered at the residence of his sister in Springfield Township and use that address for mailing and family business. Also, they plan to return to this home and often visit at that home. Section 1 of The

Pennsylvania Election Code of June 3, 1937, P. L. 1333, as amended September 9, 1959, P. L. 851, 25 PS §2813, states:

"For the purpose of registration and voting, no person shall be deemed to have gained a residence by reason of his presence, or lost it by reason of his absence, while employed in the service, either civil or military, of this State or of the United States . . . ."

Section 1 of the Act of August 13, 1963, 25 PS §3146.1(a), in defining qualified absentee electors, includes:

"Any qualified elector who is or who may be in the military service of the United States regardless of whether at the time of voting he is present in the election district of his residence or is within or without this Commonwealth and regardless of whether he is registered or enrolled . . . ."

And section 1 of the act, 25 PS §3146.1(b):

"(b) Any qualified elector who is a spouse or dependent residing with or accompanying a person in the military service of the United States if at the time of voting such spouse or dependent is absent from the State or County of his residence . . . ."

The votes of George W. Cox, Jr., and Pauline Cox should be counted.

The third military ballot should not be counted, because, although Anthony C. Mazzarella was granted a valid military absentee ballot, he failed to sign his name to the declaration on the back of the ballot envelope.

*Springfield Township*

George W. Cox, Jr.—challenge dismissed

Pauline Cox—challenge dismissed

*Plymouth Township*

Anthony C. Mazzarella—challenge sustained

Lastly, there are certain miscellaneous challenges made to particular votes which must be determined in

this matter. In the case of Edwin Ladove, the postmark on the return envelope was illegible, so there was no basis for determining the date it was voted. It is agreed that the vote was proper in all other respects, and testimony indicates that there is no question as to the date it was actually received. The ballot should be counted. However, this challenge was sustained on other grounds.

In the case of Nancy Olivia Brown, who was a student on the west coast, it was agreed that she received a defective ballot, so a second ballot was sent her. Testimony indicates that it was perfectly clear that she voted only one ballot, and due to an oversight by the election board, the defective ballot was not destroyed. This ballot should also be counted.

Throughout this opinion, we have attempted to convey the theory that absentee voting is a special privilege accorded to those persons who can demonstrate their qualification and desire to be so treated. Along with this privilege goes the responsibility of meeting the strict requirements of a qualified absentee voter. All the procedural requirements must be followed by the voter to the letter to exercise this privilege. Failure to properly complete the application or ballot must render the ballot invalid, if challenged for those reasons. However, there must be assumed a certain amount of good faith on the part of the applicant and common sense on the part of the challenger and election board. Where absences are asserted, it must be determined what is the primary purpose of that absence, business or pleasure, and, if business, then a proper basis for an absentee ballot. Where doctors have advised an elector to remain away from the polls, an investigation into the soundness of the doctor's advice should not be entertained. Where no applications have been made for assistance, no assistance in casting the ballot is permissible. . . .